OPINION
{¶ 1} Justin L. Sprowls appeals from the trial court's entry of judgment on a jury verdict convicting him on two counts of reckless homicide, R.C. 2903.0141, and two counts of involuntary manslaughter, R.C. 2903.04(B). Sprowls also appeals from the trial court's judgment entry of sentence. We affirm in part and reverse in part.
 {¶ 2} The events giving rise to the instant case began in August of 2002. At that time appellant ended his relationship with his girlfriend, Rebekah Hurst ("Hurst"). Near the same time, the victim, Skip Stephenson ("Stephenson"), ended his relationship with his girlfriend, Crystal Wolfe ("Wolfe"). Wolfe was appellant's sister and Hurst was friends with Stephenson. Appellant became acquainted with Stephenson while Stephenson dated Wolfe.
 {¶ 3} Stephenson had two puppies. He gave one of the dogs to Wolfe while they were dating. When Stephenson and Wolfe broke up, Wolfe took the other dog because she believed Stephenson was abusing it.
 {¶ 4} Stephenson approached appellant in an effort to retrieve the dog. Appellant agreed to try to get the dog back. Appellant asked his mother about it but she refused to allow Wolfe to return the dog.
 {¶ 5} Following their break-up, Hurst and appellant spoke in appellant's car in the driveway to Stephenson's house. An argument ensued and Hurst later told Stephenson and others who lived with Stephenson, Allen Manning ("Manning"), and Leigh Addison ("Addison"), that appellant had struck Hurst in the face during the argument. This angered Stephenson and began a pattern of harassment that ultimately led to Stephenson's death.
 {¶ 6} Stephenson lived around the corner from appellant and appellant's family in Painesville, Ohio. As a result of appellant's alleged hitting of Hurst and Wolfe's taking Stephenson's dog, Stephenson and others threatened to kill appellant and his family and to damage appellant's car. When appellant would drive down the street on which Stephenson lived, Stephenson and those who lived with him would yell insults at appellant and give him the finger. Appellant often reciprocated in kind. Appellant also was known to play his powerful car stereo at extreme volume. This served to alert Stephenson and his friends to appellant's approach.
 {¶ 7} On September 24, 2002, appellant drove past Stephenson's house on his way home from work; Stephenson yelled at appellant and flipped him off. Appellant returned the gesture. Appellant went home, showered, and then left to run some errands. He took a route that allowed him to avoid driving by Stephenson's home. While appellant was out, he met his sister who was walking with Stephenson's dog. He gave his sister a ride home and while doing so, passed Stephenson's house. As appellant passed the house, he saw Hurst and Addison sitting on the porch. Stephenson ran out of the house yelling at appellant and flipping him off. Stephenson's friends testified appellant stopped his car and Wolfe waived the dog's paw at Stephenson. Appellant drove away and dropped his sister off at their house. Appellant then drove back past Stephenson's house.
 {¶ 8} As appellant drove past Stephenson's house, he heard a "pop" and a "tink" and noticed a large spider web pattern in his windshield. Appellant believed Stephenson had shot at him with a 9mm handgun he knew Stephenson at one time owned. Appellant continued down the street, across railroad tracks, stopped, and called 911.
 {¶ 9} Appellant reported the shooting to 911. Appellant then told the 911 dispatcher he was driving back toward Stephenson's house and hung up. Appellant drove back across the tracks and stopped a few houses down from Stephenson's house. He sat revving his engine, purportedly to keep it from stalling, with his car stereo playing loudly.
 {¶ 10} Appellant saw Stephenson walk down the driveway onto the tree lawn. Appellant stated he believed he saw a gun in Stephenson's hand. Stephenson waved to appellant to "come on." Appellant punched the accelerator, leaving a mark on the road and sped straight down the road. Appellant then swerved toward Stephenson, his tire hit the curb, and he struck Stephenson, propelling Stephenson's head into the windshield of appellant's car. Appellant continued over the tree lawn and back onto the street where he stopped and exited his car.
 {¶ 11} A fight ensued between appellant, Manning, and Addison. Painesville police officers arrived and ordered the three to the ground at gunpoint. Appellant was taken into custody. Witnesses at the scene testified appellant was angry and yelled at Stephenson, "Look what you did to my car," and "That's what you get for fucking with me." Appellant was also heard to blame the entire incident on Hurst. An officer at the scene testified appellant stated he hit Stephenson with his car because Stephenson had a gun and was trying to shoot appellant; appellant stated, "I hit him with my car. It was the only way to stop him." Appellant also told investigators he only intended to scare Stephenson when he swerved at him and he lost control of the car when his tire hit the curb.
 {¶ 12} Investigators searched Stephenson's home and recovered several air rifles and two air pistols. Manning told police Stephenson had shot at appellant's car with an air rifle. Investigators never recovered a 9mm handgun.
 {¶ 13} Life flight transported Stephenson to the hospital where he was treated for a severe head injury. Stephenson died about a month later as a direct result of complications related to the head injury.
 {¶ 14} Appellant was indicted on four counts: (1) aggravated murder, R.C. 2903.01(A); (2) murder, R.C. 2903.02(A); (3) felony-murder, R.C. 2903.02(B); and (4) felony-murder, R.C.2903.02(B). Prior to trial appellant moved to dismiss the felonymurder counts arguing the felony murder statute was unconstitutional. The trial court denied the motion.
 {¶ 15} The matter was tried to a jury; the jury convicted appellant of the lesserincluded offenses of reckless homicide on counts one and two, and involuntary manslaughter on counts three and four. The trial court sentenced appellant to ten years in prison on count four (involuntary manslaughter). The three remaining counts merged with count four for purposes of sentencing.
 {¶ 16} Appellant timely appeals from the trial court's judgments raising seven assignments of error:
 {¶ 17} "[1.] The trial court erred by sentencing the defendant-appellant to the maximum term of imprisonment.
 {¶ 18} "[2.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 19} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 20} "[4.] The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charges due to their being in violation of the defendant-appellant's due process rights as guaranteed by the Ohio and United States Constitutions.
 {¶ 21} "[5.] The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charges due to their being in violation of the defendant-appellant's equal protection rights as guaranteed by the Ohio and United States Constitutions.
 {¶ 22} "[6.] The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charges due to their being in violation of the defendant-appellant's rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.
 {¶ 23} "[7.] The trial court erred when it sentenced the defendant-appellant to a maximum and more than the minimum sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendantappellant's state and federal constitutional right to trial by jury."
 {¶ 24} For ease of discussion, we address appellant's constitutional arguments first (assignments of error four, five, and six); we then address appellant's arguments that the trial court erred in denying his Crim.R. 29 motion and that the jury's verdicts were against the manifest weight of the evidence (assignments of error two and three); finally, we consider appellant's argument that the trial court erred in imposing the maximum sentence (assignments of error one and seven.)
 {¶ 25} In his fourth assignment of error appellant argues Ohio's felony-murder statute, R.C. 2903.02(B), violates his due process rights because it fails to require that the underlying felony be independent of the conduct that results in death, i.e., the "independent felony rule," and because it relieves the state of the burden of proving the defendant had the requisite mens rea. In his fifth assignment of error appellant argues R.C.2903.02(B) violates his right to equal protection of the laws because it and the involuntary manslaughter statute, R.C.2903.04(A), prohibit identical activity, require identical proof, and yet impose different penalties. Appellant's sixth assignment of error alleges R.C. 2903.02(B) violates the prohibition against cruel and unusual punishment because the punishment is disproportionate to the offense.
 {¶ 26} We have previously rejected these arguments. State v.Hayden (July 14, 2000), 11th Dist. No. 99-L-037, 2000 Ohio App. LEXIS 3198, 9-14; State v. Bowles (May 11, 2001), 11th Dist. No. 99-L-075, 2001 Ohio App. LEXIS 2145, 21-24. See, also Statev. Jones, 8th Dist. No. 80737, 2002-Ohio-60745, ¶ 124-136. Appellant's fourth, fifth and sixth assignments of error are without merit.
 {¶ 27} In his second assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to present sufficient evidence to prove beyond a reasonable doubt he acted purposely under the aggravated murder statute, R.C. 2903.01(A) and murder statute, R.C. 2903.02(A); or acted knowingly to prove the underlying offense of felonious assault, in support of the felonymurder charges. R.C. 2903.11(A), R.C. 2903.02(B). We conclude the trial court properly denied appellant's Crim.R. 29 motion.
 {¶ 28} The standard applied when ruling on a Crim.R. 29 motion is "`* * * whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Williams (1996),74 Ohio St.3d 569, 576, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 29} R.C. 2901.22(A) defines "purposely" as follows:
 {¶ 30} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 31} R.C. 2901.22(B) defines "knowingly": "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 32} The state presented evidence to establish appellant sat in his car revving the engine while listening to music prior to accelerating and striking Stephenson. The state also presented expert testimony that appellant traveled in a straight line until the last possible tenth of a second and then swerved and struck appellant.[1] The state presented evidence appellant did not attempt to avoid striking Stephenson by turning away or braking. The state also presented evidence appellant made the following statements at the scene: "That's what you get for fucking with me!" and "I hit him with my car. He had a gun and he was trying to shoot me. I hit him with my car. It was the only way to stop him."
 {¶ 33} Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the state proved beyond a reasonable doubt appellant acted purposely or knowingly. Appellant's second assignment of error is without merit.
 {¶ 34} In his third assignment of error appellant argues the jury's verdicts were against the manifest weight of the evidence. In support of this assignment of error, appellant argues the state failed to prove beyond a reasonable doubt he acted recklessly, and thus his convictions for reckless homicide are against the manifest weight of the evidence. He also argues the state failed to prove beyond a reasonable doubt he acted knowingly and therefore, his convictions for involuntary manslaughter are against the manifest weight of the evidence. After a thorough review of the record, we disagree.
 {¶ 35} We may find a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 76. When we consider a manifest weight argument, we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We exercise this discretionary power only in those exceptional cases where the evidence weighs heavily against conviction. Id.; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 36} R.C. 2901.22(C) defines "recklessly" as:
 {¶ 37} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 38} R.C. 2901.22(B) defines "knowingly": "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 39} Appellant argues the evidence presented at trial established he had endured a month or more of harassment from Stephenson and his friends; on the day of the incident, Stephenson fired an air rifle at him, breaking his car windshield; and in response to all of this, appellant drove his car at Stephenson in an attempt to frighten him. Essentially, appellant argues his act of striking Stephenson with his car was an accident.
 {¶ 40} As discussed under appellant's second assignment of error, the state presented evidence to establish beyond a reasonable doubt the requisite mens rea. After applying the appropriate standard of review, we cannot say the jury clearly lost its way or created a manifest miscarriage of justice. Appellant's third assignment of error is without merit.
 {¶ 41} In his first assignment of error, appellant argues the trial court erred in sentencing him to the maximum term of imprisonment. We agree.
 {¶ 42} We review a felony sentence de novo. State v.Bradford (June 2, 2001), 11th Dist. No. 2000-L-103, 2001 Ohio App. LEXIS 2487, 3. We will not disturb a sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. Id. "Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Id.
 {¶ 43} Appellant argues the trial court failed to properly consider the factors set forth in R.C. 2929.12 when imposing sentence.[2] Specifically, appellant argues the trial court failed to consider the following factors that indicate his conduct was less serious than the conduct normally constituting the offense:
 {¶ 44} "(1) The victim induced or facilitated the offense.
 {¶ 45} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 46} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 {¶ 47} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C)(1)-(4).
 {¶ 48} Appellant also argues the trial court failed to properly consider his genuine remorse.
 {¶ 49} The trial court specifically detailed on the record its findings with respect to the factors listed in R.C.2929.12(C)(1)-(4) and the trial court's findings are supported by the record.
 {¶ 50} Appellant also argues the trial court erred in imposing the maximum sentence because it considered factors unsupported by the record.
 {¶ 51} R.C. 2929.14(C) provides in relevant part:
 {¶ 52} "* * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *."
 {¶ 53} The trial court must give its reasons for imposing a maximum sentence on the record at the sentencing hearing. Statev. Newman, 100 Ohio St.3d 24, 2003-Ohio-4754.
 {¶ 54} Appellant takes issue with the following statements made by the trial court on the record at sentencing:
 {¶ 55} "Had you waited 30 seconds less before crossing those tracks, I'll bet this jury would have found you guilty of murder, but that you did not have sufficient provocation to meet the standard under the law. Thirty seconds less. I'm surprised they allowed you three minutes.
 {¶ 56} "Now, the jury found your culpable mental state was knowingly. Any worse than knowingly would be purposely. Purposely would get you 15 to life. So because I find that you were on the absolute edge of a murder conviction here, the absolute edge, just a few seconds difference and the provocation defense would have been taken from you. Just a few more brain cells clicking and the purposely would have clicked in. So you were a hair away of being convicted of the next degree of offense, which is murder, which brings a 15 to life sentence. So I do find for these reasons, you did commit the worst form of the offense."
 {¶ 57} The court also stated:
 {¶ 58} "I believe that the jury probably found that he did shoot — that he did shoot at your car earlier on a previous pass with that BB rifle and it caused a little dent in your windshield. I don't consider that sufficient provocation for what you did by any stretch of the imagination." The trial court then stated that based on these reasons, as well as appellant's lack of remorse, that appellant committed the worst form of the offense.
 {¶ 59} We are particularly troubled by the latter statement. In returning its verdict with respect to count four, the jury found appellant acted "while he was under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force." The trial judge explicitly rejected the jury's finding regarding provocation when, in support of his finding that appellant committed the worst form of the offense, he stated "I don't consider that sufficient provocation for what you did by any stretch of the imagination." The trial court erred in doing so. A trial court imposing a sentence must accept a jury's finding that the defendant acted under the influence of sudden passion or a sudden fit of rage. It may not disregard such a finding and impose a sentence based on its own view of the evidence. To do so improperly usurps the jury's role in our criminal justice system. Appellant's first assignment of error has merit.
 {¶ 60} In his seventh assignment of error, appellant argues his sentence is unconstitutional based on the United States Supreme Court's decision in Blakely v. Washington (2004),124 S.Ct. 2531. Our disposition of appellant's first assignment of error renders this argument moot. Appellant is of course free to raise this issue with the trial court at resentencing.
 {¶ 61} For the foregoing reasons the judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for resentencing.
O'Neill, J., Grendell, J., concur.
[1] The state's accident reconstructionist testified that nine-tenths of a second elapsed from the time appellant swerved until he struck Stephenson.
[2] When determining the sentence to impose the trial court must consider the factors set forth in R.C. 2929.12 relating to the seriousness of the offense and the offender's likelihood of recidivism. R.C. 2929.12(A).
{¶ a} Factors the court must consider that indicate an offender's conduct is more serious than conduct normally constituting the offense are:
{¶ b} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
{¶ c} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
{¶ d} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
{¶ e} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
{¶ f} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
{¶ g} "(6) The offender's relationship with the victim facilitated the offense.
{¶ h} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
{¶ i} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
{¶ j} "(9) If the offense is a violation of section 2919.25
or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children." R.C.2929.12(B)(1)-(9).
{¶ k} The trial court must consider the following factors that indicate the offender's conduct is less serious than conduct normally constituting the offense:
{¶ l} "(1) The victim induced or facilitated the offense.
{¶ m} "(2) In committing the offense, the offender acted under strong provocation.
{¶ n} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
{¶ o} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C).
{¶ p} The trial court must consider the following factors indicating that the offender is likely to re-offend:
{¶ q} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16,2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.
{¶ r} "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.
{¶ s} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
{¶ t} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
"(5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D).
{¶ u} The court must consider the following as factors indicating that the offender is not likely to commit future crimes:
{¶ v} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
{¶ w} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
{¶ x} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
{¶ y} "(4) The offense was committed under circumstances not likely to recur.
{¶ z} "(5) The offender shows genuine remorse for the offense." R.C. 2929.12(E).
{¶ aa} Further, the trial court must consider any other relevant factors that indicate the offender's conduct is more or less serious, or that the offender is likely or not likely to commit future crimes. R.C. 2929.12(B); 2929.12(C); 2929.12(D); and 2929.12(E).