OPINION
{¶ 1} Appellant, Justin L. Sprowls, appeals his sentence on remand pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. At issue is whether appellant's sentence is unconstitutional. For the reasons that follow, we affirm.
 {¶ 2} In August, 2002, appellant ended his relationship with his girlfriend, Rebekah Hurst. Near the same time, the victim, Skip Stephenson, ended his *Page 2 
relationship with his girlfriend, Crystal Wolfe. Crystal is appellant's sister and Rebecah was a friend of Skip. Appellant became acquainted with Skip while he dated Crystal.
 {¶ 3} Skip had two puppies. He gave one of the dogs to Crystal while they were dating. When Skip and Crystal broke up, she took the other dog because she believed Skip was abusing it.
 {¶ 4} Skip approached appellant in an effort to retrieve the dog. Appellant agreed to try to get the dog back. Appellant asked his mother about the dog but she refused to allow Crystal to return it.
 {¶ 5} Following their break-up, Rebecah and appellant spoke in appellant's car in the driveway to Skip's house. An argument ensued and Rebekah later told Skip and some of his friends who lived with Skip, Allen Manning and Leigh Addison, that appellant had struck Rebekah in the face during the argument. This angered Skip and began a pattern of harassment that ultimately led to his death.
 {¶ 6} Skip lived around the corner from appellant and appellant's family in Painesville, Ohio. As a result of appellant's alleged assault on Rebekah and Crystal taking Skip's dog, Skip and his friends threatened to kill appellant and his family and to damage appellant's car. When appellant would drive down the street on which Skip lived, Skip and his friends would yell insults at appellant and "give him the finger." Appellant often reciprocated in kind. Appellant also was known to play his powerful car stereo at extremely high volume. This served to alert Skip and his friends to appellant's approach.
 {¶ 7} On September 24, 2002, appellant drove past Skip's house on his way home from work. Skip yelled at appellant and "flipped him off." Appellant returned the *Page 3 
gesture. Appellant went home, showered, and then left to run some errands. He took a route that allowed him to avoid driving by Skip's home. While appellant was out, he met his sister Crystal who was walking Skip's dog. He gave Crystal a ride home and while doing so, passed Skip's house. As appellant passed the house, he saw Rebekah and Skip's friend Leigh Addison sitting on the porch. Skip ran out of the house yelling at appellant and flipping him off. Skip's friends testified appellant stopped his car and Crystal waived the dog's paw at Skip. Appellant drove away and dropped Crystal off at their house. Appellant then drove back past Skip's house.
 {¶ 8} As appellant drove past Skip's house, he heard a "pop" and a "tink" and noticed a large spider web pattern in his windshield. Appellant believed Skip had shot at him with a 9mm. handgun he knew Skip at one time owned. Appellant continued down the street, across railroad tracks, stopped, and called 911.
 {¶ 9} Appellant reported the shooting to 911. He then told the 911 dispatcher he was driving back toward Skip's house and hung up. Appellant drove back across the tracks and stopped a few houses down from Skip's house. He sat revving his engine, allegedly to keep it from stalling, with his car stereo playing loudly.
 {¶ 10} Appellant saw Skip walk down the driveway onto the tree lawn. Appellant stated he believed he saw a gun in Skip's hand. Skip waved to appellant to "come on." Appellant punched the accelerator, leaving a mark on the road and sped straight down the road. Appellant then swerved toward Skip, his tire hit the curb, and he struck Skip, propelling Skip's head into the windshield of appellant's car. Appellant continued driving over the tree lawn and back onto the street where he stopped and exited his car. *Page 4 
 {¶ 11} A fight ensued between appellant, Allen Manning, and Leigh Addison. Painesville police officers arrived and ordered the three to the ground at gunpoint. Appellant was taken into custody. Witnesses at the scene testified appellant was angry and yelled at Skip, "Look what you did to my car," and "That's what you get for fucking with me." Appellant was also heard to blame the entire incident on Rebekah. An officer at the scene testified appellant stated he hit Skip with his car because Skip had a gun and was trying to shoot him. Appellant stated, "I hit him with my car. It was the only way to stop him." Appellant also told investigators he only intended to scare Skip when he swerved at him and he lost control of the car when his tire hit the curb.
 {¶ 12} Investigators searched Skip's home and recovered several air rifles and two air pistols. Skip's friend Allen Manning told police Skip had shot at appellant's car with an air rifle. Investigators never recovered a 9mm. handgun.
 {¶ 13} Life flight transported Skip to the hospital where he was treated for a severe head injury. Skip died about a month later as a direct result of complications related to the head injury.
 {¶ 14} Appellant was indicted on four counts: (1) aggravated murder, in violation of R.C. 2903.01(A); (2) murder, in violation of R.C.2903.02(A); (3) felony-murder, in violation of R.C. 2903.02(B); and (4) felony-murder, in violation of R.C. 2903.02(B). Prior to trial appellant moved to dismiss the felony-murder counts arguing the felony murder statute was unconstitutional. The trial court denied the motion.
 {¶ 15} The matter was tried to a jury from February 18, 2003 to February 27, 2003. The jury found appellant guilty of the lesser-included offenses of reckless homicide, a third-degree felony, on counts one and two, and involuntary manslaughter, *Page 5 
a first-degree felony, on counts three and four. The trial court sentenced appellant to the maximum term of imprisonment of ten years in prison on count four, involuntary manslaughter. The court found the three remaining counts merged with count four for purposes of sentencing.
 {¶ 16} This is the third time this matter has been before us. InState v. Sprowls, 11th Dist. No. 2003-L-056, 2004-Ohio-6328, this court reversed and remanded appellant's conviction on the ground that the trial court erred in its reasons for imposing the maximum term of imprisonment, i.e., ten years, when it rejected the jury's finding that appellant acted under serious provocation.
 {¶ 17} The trial court re-sentenced appellant on March 24, 2005, following this court's remand. The trial court relied on and made findings under R.C. 2929.14(B) and (C) and 2929.19(B)(2) in imposing its sentence of ten years in prison.
 {¶ 18} Appellant appealed his re-sentence in State v. Sprowls, 11th Dist. No. 2005-L-077, 2006-Ohio-3774. While that case was pending on direct appeal, the Supreme Court's decision in Foster, supra, was released. This court reversed and remanded for re-sentencing pursuant toFoster. On remand the trial court sentenced appellant to ten years in prison. This appeal follows. For his assignments of error, appellant asserts the following:
 {¶ 19} "[1] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO A MORE-THAN-THE-MINIMUM AND MAXIMUM PRISON TERM IN VIOLATION OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS. *Page 6 
 {¶ 20} "[2] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO A MORE-THAN-THE-MINIMUM AND MAXIMUM PRISON TERM IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS.
 {¶ 21} "[3.] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO A MORE-THAN-THE-MINIMUM AND MAXIMUM PRISON TERM BASED ON THE OHIO SUPREME COURT'S SEVERANCE OF THE OFFENDING PROVISIONS UNDER FOSTER, WHICH WAS AN ACT IN VIOLATION OF THE PRINCIPLE OF SEPARATION OF POWERS.
 {¶ 22} "[4] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO A MORE-THAN-THE-MINIMUM AND MAXIMUM PRISON TERM CONTRARY TO THE RULE OF LENITY.
 {¶ 23} "[5.] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO A MORE-THAN-THE-MINIMUM AND MAXIMUM PRISON TERM CONTRARY TO THE INTENT OF THE OHIO LEGISLATORS."
 {¶ 24} The arguments raised by appellant in his assignments of error are identical to those arguments raised and rejected in numerous prior decisions of this court. See State v. Green, 11th Dist. Nos. 2005-A-0069 and 2005-A-0070, 2006-Ohio-6695; State v. Asbury, 11th Dist. No. 2006-L-097, 2007-Ohio-1073; State v. Anderson, 11th Dist. No. 2006-L-142, 2007-Ohio-1062; State v. Spicuzza, 11th Dist. No. 2006-L-141, 2007-Ohio-783; and State v. Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011, discretionary appeal not allowed byState v. Elswick, 2007-Ohio-2208, 2007 Ohio LEXIS 1175. *Page 7 
 {¶ 25} The Ohio Supreme Court thus declined to accept jurisdiction and dismissed the appeal filed in Elswick, wherein the same arguments appellant asserts here were raised.
 {¶ 26} These same arguments have also been consistently rejected by other Ohio appellate districts and federal courts. See State v.Gibson, 10th Dist. No. 06AP-509, 2006-Ohio-6899; State v. Moore, 3d Dist. No. 1-06-51, 2006-Ohio-6860; United States v.Portillo-Quezada (C.A. 10 2006), 469 F.3d 1345, 1354-1356, and the cases cited therein.
 {¶ 27} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur. *Page 1