OPINION
{¶ 1} Appellant, Matthew A. Boczek, appeals from the December 10, 2004 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for violating a protection order.
 {¶ 2} On August 25, 2004, in Case No. 04 CR 000370, appellant was indicted by the Lake County Grand Jury on one count of violating a protection order, a felony of the fifth degree, in violation of R.C. 2919.27. On August 27, 2004, appellant entered a not guilty plea at his arraignment.
 {¶ 3} On October 5, 2004, in Case No. 04 CR 000491, appellant was indicted by the Lake County Grand Jury on one count of violating a protection order, a felony of the fifth degree, in violation of R.C. 2919.27. Appellant pleaded not guilty at his arraignment on October 12, 2004.
 {¶ 4} On October 28, 2004, appellee, the state of Ohio, filed a motion to join both cases pursuant to Crim.R. 13. In its November 1, 2004 judgment entry, the trial court granted appellee's motion and consolidated Case Nos. 04 CR 000370 and 04 CR 000491.
 {¶ 5} A jury trial commenced on December 6, 2004.
 {¶ 6} At the trial, Lieutenant Nicholas Iliano ("Lieutenant Iliano"), with the Lake County Sheriff's Department ("LCSD"), testified for appellee that during May 2004, he came in contact with appellant, who was an inmate at the Lake County Jail ("LCJ"). Lieutenant Iliano stated that the telephones in the various ranges of the LCJ are monitored. He examined the phone records in appellant's range, 4G, which showed that eleven calls were placed to 216-961-7731. Lieutenant Iliano said that inmates can get around blocked numbers by calling a third person and asking that individual to call their intended target. On cross-examination, Lieutenant Iliano indicated that up to twelve inmates could be in a particular range with access to a telephone.
 {¶ 7} Deputy Michael Zgrebnak ("Deputy Zgrebnak") with the LCSD testified for appellee that on May 25, 2004, he received a call from Tamra Williams ("Williams"), who was appellant's live-in girlfriend, regarding a violation of a protection order. Williams went to the LCJ to meet with appellant's probation officer. While exiting the LCJ on East Erie Street, she heard and saw appellant pounding on the fourth floor window. According to Deputy Zgrebnak, as she drove home from the LCJ, Williams complained that she received a hang-up call to her cell phone from 216-961-7731, but did not answer. The same number appeared a few minutes later and she answered the call. Williams recognized appellant's voice, and indicated that he yelled at her and called her names. Williams' cell phone records revealed that 216-961-7731 showed up as "received calls."
 {¶ 8} The following day, Deputy Zgrebnak dialed 216-961-7731 and spoke with William Rivera, a Hispanic male who he had a hard time understanding. Deputy Zgrebnak also spoke with William Rivera's wife, Gloria, who he could not understand either. Through an interpreter, Gloria Rivera said that she knew someone who went by "Junior" at the LCJ, who told her that he needed to make a three-way call to a line that was blocked. Deputy Zgrebnak testified that Williams' phone number was blocked from the LCJ. A review of the phone records indicated that eleven calls were made to the Rivera residence from the 4G range at the LCJ, including some around the time that Williams received a call from appellant. Range 4G is located in the front of the LCJ which looks out onto East Erie Street.
 {¶ 9} Deputy Zgrebnak interviewed appellant at the LCJ. According to Deputy Zgrebnak, appellant stated that he was served with a protection order approximately one week before this incident, and said that he pounded on the window when he saw Williams and her ex-husband outside of the LCJ. Deputy Zgrebnak indicated that appellant denied calling Williams.
 {¶ 10} On cross-examination, Deputy Zgrebnak testified that Williams never told him that appellant threatened her in any manner.
 {¶ 11} Williams testified for appellee that while living with appellant, he was arrested for domestic violence on May 11, 2004, and was incarcerated. A temporary protection order was filed but she was advised that the order would expire when appellant was released from jail. As a result, on May 17, 2004, Williams applied for an ex parte civil protection order. The trial court granted the order and indicated that appellant was restrained from any contact, including telephone contact, with Williams. Ultimately, the trial court granted a five year civil protection order on June 1, 2004.
 {¶ 12} According to Williams, on May 25, 2004, she received a phone call from a number in the 216 area code, but did not answer the call. A couple minutes later, she received a second call from a number in the 216 area code and answered her cell phone. Williams indicated that it was appellant and that he yelled at her. She then contacted the LCSD. Williams testified that her phone number was blocked from the LCJ.
 {¶ 13} Williams stated that another incident occurred on July 27, 2004, when she was driving southbound on Route 91 in Eastlake, Ohio, with her two children. She said that appellant pulled up alongside her vehicle and began yelling at her through his open car window. Patrolman Ken Roberts ("Patrolman Roberts") with the Eastlake Police Department witnessed the encounter and intervened. Both Patrolman Roberts and Williams testified that appellant "took off" and a foot chase ensued.[1] Appellant was later caught by another officer and arrested.
 {¶ 14} On cross-examination, Williams stated that the matter ultimately started as the result of a domestic violence complaint which she filed against appellant. Williams admitted at one point that she was going to call the police and lie by saying that appellant struck her in order to get him to leave the residence. She then said that it was just a threat. On re-direct examination, with respect to the domestic violence complaint, Williams indicated that she wanted appellant to leave the house. She threatened him by saying that she was going to call the police, at which time he shoved her into a wall. Williams told authorities that she threatened appellant.
 {¶ 15} On December 7, 2004, the jury returned a verdict of guilty. Pursuant to its December 10, 2004 judgment entry, the trial court sentenced appellant to twelve months in prison on each count, to run consecutive to each other, with a combined total from both cases of one hundred eighty-eight days of credit for time served. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 16} "[1.] Sentencing in this case violated the Apprendi
doctrine as explained in Blakely v. Washington and was therefore unconstitutional.
 {¶ 17} "[2.] The conviction was against the manifest weight of the evidence.
 {¶ 18} "[3.] The offense as charged was unconstitutional, in violation of [appellant's] right to due process of law, and counsel was ineffective for not challenging the enforcement of this statute in these circumstances."
 {¶ 19} In his first assignment of error, appellant argues that his constitutional rights were violated when he was ordered to serve his sentences consecutively in violation of Apprendi v.New Jersey (2000), 530 U.S. 466, and Blakely v. Washington
(2004), 542 U.S. 296.
 {¶ 20} An appeal of a sentence is moot if the party challenging the sentence has served the imposed time. State v.Smith (Mar. 22, 2002), 11th Dist. No. 2000-L-195, 2002 Ohio App. LEXIS 1341, at 4.
 {¶ 21} Here, appellant was sentenced on December 10, 2004, to twelve months in prison on each count, to run consecutive to each other, with a combined total from both cases of one hundred eighty-eight days of credit for time served. Therefore, because appellant has completed his sentence, his first assignment of error is moot.
 {¶ 22} In his second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Appellant stresses that Williams' testimony was highly questionable since she was an "admitted liar."
 {¶ 23} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L0-82, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 24} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 25} "* * *
 {¶ 26} "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 27} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *." (Emphasis sic.)
 {¶ 28} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387.
 {¶ 29} In the case at bar, appellant's brief only addresses the May 25, 2004 incident, Case No. 04 CR 000370. Thus, we will address appellant's second assignment of error pertaining to the August 25, 2004 indictment.
 {¶ 30} The protection order clearly prohibited appellant from making any contact, including telephone contact, with Williams. Again, Williams testified that appellant called her on her cell phone on May 25, 2004. Deputy Zgrebnak, who investigated the matter, indicated that the phone records revealed the call was placed from 216-9617-731, the Rivera's residence. Deputy Zgrebnak stated that Gloria Rivera said that she knew someone at the LCJ who told her he needed to make a three-way call to a line that was blocked. Williams' phone number was blocked from the LCJ. According to Lieutenant Iliano, inmates are able to get around blocked numbers by calling a third person and asking that individual to call their intended target. Phone records showed that the 216-961-7731 phone number was called eleven times on the day at issue from range 4G of the LCJ, the particular area were appellant was incarcerated. Range 4G is located in the front of the LCJ which looks out onto East Erie Street. Appellant admitted to Deputy Zgrebnak that he was agitated when he saw Williams and her ex-husband the day the call was made. Appellant pounded on the window while watching them exit the LCJ.
 {¶ 31} Appellant claims that Williams' testimony was highly questionable because she was an "admitted liar." Again, on cross-examination, Williams stated that she was going to call the police and lie by saying that appellant struck her in order to get him to leave the residence. She then said it was just a threat. On re-direct examination, Williams indicated that she wanted appellant to leave the house. She threatened him by saying she would call the police, at which time he shoved her into a wall. Williams told authorities that she threatened appellant.
 {¶ 32} Williams' direct testimony that appellant called her cell phone, if believed, is sufficient to establish appellee's case beyond a reasonable doubt. In addition, we note that Williams' testimony was corroborated at the jury trial.
 {¶ 33} Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of violating a protection order. Here, the jury clearly chose to believe the testimony of appellee's witnesses and the evidence presented.
 {¶ 34} Appellant's second assignment of error is without merit.
 {¶ 35} In his third assignment of error, appellant alleges that the offense for which he was charged was in and of itself unconstitutional. He also contends that his counsel was ineffective for not challenging the enforcement of the statute.
 {¶ 36} At first glance, it appears appellant is alleging ineffective assistance of counsel. However, he does not cite to any authority to support an ineffective assistance of counsel claim. In fact, although he faults his trial counsel, his brief clearly states he "does not herein seek review of whether trial counsel was ineffective in not attacking the Leviathan enactment in its entirety."
 {¶ 37} This court stated in State v. Heilman, 11th Dist. Nos. 2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, at ¶ 61:
 {¶ 38} "Courts in Ohio, in determining whether or not a statute is unconstitutional, follow the well-settled axiom that a regularly enacted statute of the General Assembly is presumed to conform with the Ohio and United States Constitutions and is, therefore, entitled to the benefit of every presumption in favor of its constitutionality, unless it appears beyond a reasonable doubt that the legislation and the constitutional provisions are incompatible. State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142 * * *, at paragraph one of the syllabus. Accordingly, the burden rests on the party challenging the statute to prove otherwise. State v. Thompkins,75 Ohio St.3d 558, 560 * * *; Arnold v. Cleveland (1993), 67 Ohio St.3d 35,38 * * *." (Parallel citations omitted.)
 {¶ 39} In the instant matter, appellant has failed to rebut this presumption of constitutionality beyond a reasonable doubt. Instead of relying on any authority, appellant makes a general policy argument. There is no due process issue here. The evidence establishes that appellant received a copy and acknowledged receipt of the civil protection order approximately one week before the incident at issue. The record also shows that appellant was familiar with civil protection orders and had knowledge that he should not violate them.
 {¶ 40} Appellant's third assignment of error is without merit.
 {¶ 41} For the foregoing reasons, appellant's first assignment of error is moot. Appellant's second and third assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., Rice, J., concur.
[1] Patrolman Roberts also testified for appellee. Appellant did not present any witnesses.