OPINION
{¶ 1} Appellant, Joseph L. Elswick, appeals from the April 5, 2006 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for failure to comply with order or signal of police officer and receiving stolen property.
 {¶ 2} On February 10, 2006, appellant was indicted by the Lake County Grand Jury on five counts: counts one and five, failure to comply with order or signal of police officer, felonies of the third degree, in violation of R.C. 2921.331(B); count two, receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); count three, failure to comply with order or signal of police officer, a felony of the fourth degree, in violation of R.C. 2921.331(B); and count four, grand theft of a motor vehicle, a felony of the fourth degree, in violation of R.C. 2913.02(A) (1 ).[1] On February 17, 2006, appellant filed a waiver of his right to be present at the arraignment and the trial court entered a not guilty plea in his behalf.
 {¶ 3} On March 6, 2006, appellant withdrew his former plea of not guilty, and entered an oral and written plea of guilty to counts one and two. On March 10, 2006, the trial court accepted appellant's guilty plea on counts one and two, and entered a nolle prosequi on the remaining three counts.
 {¶ 4} Pursuant to its April 5, 2006 judgment entry, the trial court sentenced appellant to three years in prison on count one and one year on count two, with one hundred-twelve days of credit for time already served. The trial court indicated that the prison sentence in count two was to be served consecutive to the sentence in count one, for a total of four years in prison. The trial court suspended appellant's driver's license for ten years, to commence upon his release from prison. The trial court notified appellant that post release control is optional up to a maximum of three years. Also, the trial court ordered appellant to pay all court costs and fees. It is from the foregoing judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 5} "[1.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions.
 {¶ 6} "[2.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms in violation of [appellant's] right to due process.
 {¶ 7} "[3.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms based on the Ohio Supreme Court's severance of the offending provisions under Foster, which was an act in violation of the principle of separation of powers.
 {¶ 8} "[4.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms contrary to the rule of lenity.
 {¶ 9} "[5.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms contrary to the intent of the Ohio legislators."
 {¶ 10} In his first assignment of error, appellant argues that the trial court erred by sentencing him to more than the minimum prison terms in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions. He alleges that the sentences imposed were not available to the trial court at the time the offenses were committed.
 {¶ 11} In his second assignment of error, appellant contends that the trial court erred by sentencing him to more than the minimum prison terms in violation of his right to due process. He maintains that he had neither actual nor constructive notice that the sentences imposed were possible punishments for the offenses.
 {¶ 12} Appellant's first and second assignments of error are interrelated since they both are premised on alleged violations of ex post facto principles embedded in the notion of due process. Thus, we will address them in a consolidated fashion.
 {¶ 13} Preliminarily, we note that there is no constitutional right to an appellate review of a criminal sentence. Ross v. Moffitt (1974),417 U.S. 600, 610-11; State v. Smith (1997), 80 Ohio St.3d 89, 97. The United States Supreme Court in Estelle v. Dorrough (1975), 420 U.S. 534,536, held that "there is no federal constitutional right to state appellate review of state criminal convictions." The Supreme Court has stated that "the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance." State ex rel. Bryant v. Akron Metro. Park Dist. (1930),281 U.S. 74, 80.
 {¶ 14} The Fifth District in State v. Firouzmandi, 5th Dist. No. 2006-CA-41, 2006-Ohio-5823, at ¶ 18, recently stated:
 {¶ 15} "[a]lthough the Ohio Constitution does not expressly provide for a `right' to appeal, Article IV, Section 3(B)(1)(f) does provide for the establishment of an appellate court system. Section 2505.03 of the Ohio Revised Code further provides that: `(e)very final order, judgment, or decree of a court and, when provided by law, the final order of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality, may be reviewed * * * unless otherwise provided by law.' In addition, Rule 3(A) of the Ohio Rules of Appellate Procedure make every litigant entitled to `(a)n appeal as of right . . . by filing a notice of appeal * * * within the time allowed by Rule 4 * * *.'"
 {¶ 16} With respect to his first and second assignments of error, appellant raises an issue of first impression for our court. However, other appellate districts have considered the question, and concluded that State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, does not violate due process and the ex post facto clause because defendants face the same potential sentences as they did before Foster was decided. SeeState v. Smith, 2d Dist. No. 21004, 2006-Ohio-4405; State v.Newman, 9th Dist. No. 23038, 2006-Ohio-4082; and State v. McGhee, 3d Dist. No. 17-06-05, 2006-Ohio-5162.
 {¶ 17} Article I, Section 10 of the United States Constitution provides that no state shall pass ex post facto laws. The ex post facto clause extends to four types of laws:
 {¶ 18} "'1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment,and inflicts a greater punishment, than the law annexed to the crime,when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offense, in order to convict the offender.'" (Emphasis added.) Rogers v. Tennessee (2001), 532 U.S. 451,456, quoting Calder v. Bull (1798), 3 U.S. 386, 390 (seriatum opinion of Chase, J.).
 {¶ 19} In addition, "'Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments.'" Smith v.Smith, 109 Ohio St.3d 285, 2006-Ohio-2419, at ¶ 6, quoting Vogel v.Wells (1991), 57 Ohio St.3d 91, 99. "The retroactivity clause nullifies those new laws that `reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time (the statute becomes effective).'" Bielat v. Bielat (2000), 87 Ohio St.3d 350,352-353, quoting Miller v. Hixson (1901), 64 Ohio St. 39, 51.
 {¶ 20} In the instant matter, we must consider both the federal and state constitutional ramifications of Foster[2]
 {¶ 21} With respect to the federal constitutional considerations, due process guarantees notice and a hearing. The right to a sentencing hearing has not been implicated by Foster. Thus, we are only concerned with the issue of warning as to potential sentences. Federal circuit courts have determined that United States v. Booker (2005),543 U.S. 220, does not violate the ex post facto clause because there has been no due process violation.
 {¶ 22} Most circuit courts have held that defendants were on notice with respect to statutory maximums, regardless of whether the federal sentencing guidelines were mandatory. McGhee, supra, at ¶ 15, citingUnited States v. Duncan (11th Cir. 2005), 400 F.3d 1297. See, also,United States v. Pennavaria (3d Cir. 2006), 445 F.3d 720; United Statesv. Davenport (4th Cir. 2006), 445 F.3d 366; United States v.Alston-Graves (D.C. Cir. 2006), 435 F.3d 331; United States v.Vaughn (2nd Cir. 2005), 430 F.3d 518; United States v. Dupas (9th Cir. 2005), 419 F.3d 916; and United States v. Jamison (7th Cir. 2005),416 F.3d 538.
 {¶ 23} Similarly in Ohio, prior to Foster, individuals who decided to commit crimes were aware of what the potential sentences could be for the offenses committed. R.C. 2929.14(A). Here, appellant pleaded guilty to count one, failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331(B), and count two, receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A). The indictment alleged that appellant committed the foregoing offenses on December 13, 2005. Thus, appellant's offenses were committed before Foster, but after Apprendi v. NewJersey (2000), 530 U.S. 466, Blakely v. Washington (2004), 542 U.S. 296, and Booker, supra.
 {¶ 24} There was no legislative alteration of Ohio's sentencing code post Foster. The range of sentences available for third and fourth degree felonies remained unchanged. R.C. 2929.14(A)(3) and (4) provided fair warning to appellant that he could receive anywhere from one to five years for his third degree felony offense, and six to eighteen months for his fourth degree felony offense. Appellant understood and signed his plea agreement, specifying the code provisions in effect at that time, which, again, have not changed or been enlarged in any manner after Foster. He was sentenced on April 3, 2006, over a month afterFoster was decided.
 {¶ 25} Appellant knew the potential statutory sentence, had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change. Therefore, this court cannot hold that Foster violates federal notions of due process as established in Bouie v. Columbia (1964),378 U.S. 347, and Rogers, supra.
 {¶ 26} Regarding the state constitutional considerations, the Third District in McGhee, supra, at ¶ 21-22, stated:
 {¶ 27} "[i]n construing Ohio's constitution, we must adapt the test for retroactive legislation to apply to retroactive judicial decisions. In determining whether a law violates Section 28, Article II of the Ohio Constitution, we must first evaluate whether the court intended its holding to apply retroactively. See [Smith, supra at ¶ 6] * * *. InFoster, the court applied its holding retroactively, but only so as to affect cases on direct appeal and those cases pending in the trial courts. Foster, at ¶ 104. * * *
 {¶ 28} "Even though a law may apply retroactively, it is not necessarily unconstitutional. A substantive retroactive law will be held unconstitutional, while a remedial retroactive law is not.Smith, at ¶ 6 * * *. A statute is substantive if it `"impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction."' Id. at ¶ 6 * * *."
 {¶ 29} We agree with the Third District that the court's holding inFoster does not create a substantively retroactive law. McGhee, supra, at ¶ 23. The holding in Foster applies retroactively in a limited number of cases, but it does not affect a vested or an accrued substantive right. Id. "[A] presumed sentence can be `taken away' without the defendant's consent." Id. at ¶ 24. Thus, no vested right has been affected by Foster. Id. In addition, no accrued substantial right has been affected. Id. at ¶ 25. "[Defendants are not entitled to enforce or protect specific sentences prior to sentencing." Id. A range of determinative sentences available for each degree of felony offense is established in R.C. 2929.14(A). "Even under S.B.2, defendants could not expect a specific sentence because judges could make findings to sentence anywhere within the range provided by R.C. 2929.14(A)." Id.
 {¶ 30} Foster does not violate Section 28, Article II of the Ohio Constitution, or Article I, Section 10 of the United States Constitution.
 {¶ 31} Appellant's first and second assignments of error are without merit.
 {¶ 32} In his third assignment of error, appellant contends that the trial court erred by sentencing him to more than the minimum prison terms based on the Supreme Court of Ohio's severance of the offending provisions under Foster, which was an act in violation of the principle of separation of powers. He stresses that the sentences imposed were the result of a judicially mandated change to Ohio's sentencing statutes.
 {¶ 33} In State v. Hochhausler (1996), 76 Ohio St.3d 455, 463, the Supreme Court of Ohio stated:
 {¶ 34} "[t]he principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. State v. Warner
(1990), 55 Ohio St.3d 31, 43-44 * * *. See State v. Harmon (1877),31 Ohio St. 250, 258. It is inherent in our theory of government `"that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved. (* * *)"' South Euclid v. Jemison (1986),28 Ohio St.3d 157, 159 * * *, quoting Fairview v. Giffee (1905), 73 Ohio St. 183, 187
* * *." (Parallel citations omitted.)
 {¶ 35} This court stated in State v. Boczek, 11th Dist. Nos. 2005-L-008 and 2005-L-009, 2006-Ohio-3767, at ¶ 37-38, quoting State v.Heilman, 11th Dist. Nos. 2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, at ¶ 61:
 {¶ 36} "'[c]ourts in Ohio, in determining whether or not a statute is unconstitutional, follow the well-settled axiom that a regularly enacted statute of the General Assembly is presumed to conform with the Ohio and United States Constitutions and is, therefore, entitled to the benefit of every presumption in favor of its constitutionality, unless it appears beyond a reasonable doubt that the legislation and the constitutional provisions are incompatible. State ex rel. Dickman v.Defenbacher (1955), 164 Ohio St. 142 * * * (* * *), at paragraph one of the syllabus. Accordingly, the burden rests on the party challenging the statute to prove otherwise. State v. Thompkins, 75 Ohio St.3d 558, 560;Arnold v. Cleveland (1993), 67 Ohio St.3d 35, 38 * * *.'" (Parallel citations omitted.)
 {¶ 37} R.C. 1.50 deals with severability of code section provisions and provides: "[i]f any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."
 {¶ 38} In the case sub judice, we do not agree with appellant that the Supreme Court of Ohio violated the separation of powers doctrine. We note that severance is a specific remedy that the judicial branch may use when interpreting a statute's constitutionality. Pursuant to R.C.1.50, if a statute is determined to be unconstitutional, the judicial branch is vested with the power to sever the provision found to be invalid. The Supreme Court in Foster did not exceed its power by severing the statutes it found incompatible with the Ohio and United States Constitution. Rather, it employed the same remedy used by the United States Supreme Court in Booker, supra, in order to bring Ohio's sentencing scheme in line with constitutional mandates.
 {¶ 39} Appellant's third assignment of error is without merit.
 {¶ 40} In his fourth assignment of error, appellant maintains that the trial court erred by sentencing him to more than the minimum prison terms contrary to the rule of lenity. He alleges that he should have received the minimum sentences available for his offenses.
 {¶ 41} R.C. 2901.04(A) states: "* * * sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."
 {¶ 42} "The `rule of lenity' is a principle of statutory construction which states that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant where the intended scope of the statute is ambiguous." State v. Brown (May 2, 1997), 2d Dist. No. 96 CA 92, 1997 Ohio App. LEXIS 1747, at 10, citing Moskal v.United States (1990), 498 U.S. 103, 107-108. The rule of lenity "provides that ambiguity in criminal statutes is construed strictly so as to only apply to conduct that is clearly prescribed." State v. Goist, 11th Dist. No. 2002-T-0136, 2003-Ohio-3549, at ¶ 23, citing United States v.Lanier (1997), 520 U.S. 259, 266.
 {¶ 43} In the instant case, appellant was sentenced afterFoster, and, thus, the trial court was bound to apply the law announced by the Supreme Court of Ohio. Because R.C. 2929.14(B) is not ambiguous, the rule of lenity does not apply. See Goist, supra, at ¶ 23, citingUnited States v. Johnson (2000), 529 U.S. 53, 59, (holding "'[a]bsent ambiguity, the rule of lenity is not applicable to guide statutory interpretation.'")
 {¶ 44} Appellant's fourth assignment of error is without merit.
 {¶ 45} In his fifth assignment of error, appellant alleges that the trial court erred by sentencing him to more than the minimum prison terms contrary to the intent of the Ohio legislators. He maintains that by severing the offending statutes in Foster, the Supreme Court failed to uphold the intent of the Ohio General Assembly when it enacted Senate Bill 2 ("S.B. 2"). Appellant stresses that excising the findings a trial court was required to make when imposing more than the minimum, maximum, or consecutive terms, eliminates meaningful appellate review. Also, he contends that the severance remedy in Foster was more severe than the remedy used in Booker.
 {¶ 46} The Fifth District in Firouzmandi, at ¶ 54-57, stated:
 {¶ 47} "* * * we apply an abuse of discretion standard to appeals challenging the trial court's imposition of sentence. This term however has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. An excellent analysis of the misconception surrounding the concept of `abuse of discretion' was set forth by the Arizona Supreme Court sitting en banc: `(t)he phrase "within the discretion of the trial court" is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations.Walsh v. Centeio, 692 F.2d 1239, 1242 (9th Cir.1982). Thus, the phrase "within the discretion of the trial court" does not mean that the court is free to reach any conclusion it wishes. It does mean that where there are opposing equitable or factual considerations, we will not substitute our judgment for that of the trial court'. State v. Chapple (1983), 135 Ariz. 281, 296-97 * * *. However, the Court explained, `(t)he term "abuse of discretion" is unfortunate. In ordinary language, "abuse" implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word "abuse" in the phrase "abuse of discretion" has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice.State ex rel. Fletcher v. District Court of Jefferson County,213 Iowa 822, 831 * * * (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence "is an abuse." Kinnear v. Dennis, 1924 OK 171 * * * (1924).'
 {¶ 48} "* * *
 {¶ 49} "Accordingly, appellate courts can find an `abuse of discretion' where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. Cincinnati v.Clardy (1978), 57 Ohio App.2d 153 * * *. An `abuse of discretion' has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley, supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's [sic] can reverse the sentence. Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of [a] sentence in a particular case. However these examples demonstrate that appellant's right to a meaningful appellate review have not been impeded by the decision in Foster. Accordingly, nothing in the Foster decision prevents an appellate court from conducting an effective and meaningful appellate review of the final judgments, orders or sentences of inferior courts.
 {¶ 50} "Both the United States Supreme Court and the Supreme Court of Ohio found that the particular mechanism that the legislature chose in an attempt to guide judicial discretion in sentencing was constitutionally infirm. Nothing in the Foster or Booker decisions prevent the legislature from enacting provisions which comply with the respective constitutional safeguards. `Ours, of course, is not the last word: The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long-term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice.' Booker, supra * * *, at 768." (Parallel citations omitted.)
 {¶ 51} With respect to the intent of the legislature in enacting S.B. 2 in 1996, the Supreme Court stated: "[w]ith the enactment of S.B. 2, the General Assembly adopted a comprehensive sentencing structure that recognized the importance of `truth in sentencing.' The general purpose of S.B. 2 was to introduce certainty and proportionality to felony sentencing." Foster at ¶ 34. The Supreme Court described the "overwhelming majority" of S.B. 2 reforms that survive its holding, and noted that trial courts must still "consider those portions of the sentencing code that are unaffected by [its] decision * * *." Id. at ¶ 101, 105. For example, trial courts must still consider R.C. 2929.11
and R.C. 2929.12 before imposing a sentence within the authorized statutory range. Id. at ¶ 105. See, also, State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, at ¶ 38.
 {¶ 52} "Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. See R.C.2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to `upward departures,' that is the findings necessary to increase the potential prison penalty. We add no language and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place." Foster at ¶ 98.
 {¶ 53} R.C. 2929.11 and R.C. 2929.12, two key statutory provisions of Ohio's sentencing scheme, survive after Foster. Even though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, R.C. 2929.11 and R.C. 2929.12 must still be considered when sentencing offenders. Thus, although Foster and Mathis alter R.C.2953.08, meaningful appellate review can still be achieved. Trial courts generally discuss the seriousness of the offense and the likelihood of recidivism at the sentencing hearing. The fact that defendants may not have as many options on appeal as they did before Foster, does not suggest that the Supreme Court wholly ignored the legislative intent of S.B. 2.
 {¶ 54} We do not agree with appellant that the severance remedy inFoster is a more severe and radical departure than that used inBooker. Pursuant to Booker, again, the Supreme Court of Ohio determined that trial courts are still required to consider R.C. 2929.11 and R.C.2929.12 before imposing a sentence within the authorized statutory range. See Foster and Mathis. Appellant's right to a meaningful appellate review has not been impeded by the decision inFoster.
 {¶ 55} Appellant's fifth assignment of error is without merit.
 {¶ 56} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., concurs,
CYNTHIA WESTCOTT RICE, J., concurs in judgment only with Concurring Opinion.
[1] The charges in this case stem from an incident which occurred on December 13, 2005. Appellant's vehicle had gotten stuck in the snow and a Good Samaritan stopped to help him. Appellant then stole the Good Samaritan's car, which led to a high speed chase by the police.
[2] In Foster, the Supreme Court of Ohio held that the trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive or more than the minimum sentences.Foster, supra, at paragraph seven of the syllabus.