OPINION
{¶ 1} Appellant, Christopher Curd, appeals from the sentencing entry of the Lake County Court of Common Pleas. This court had previously affirmed the trial court's determinations on direct appeal. However, appellant filed a discretionary appeal to the Supreme Court of Ohio. On May 3, 2006, the Supreme Court reversed and remanded appellant's case for re-sentencing in light of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. In re Ohio Criminal Sentencing Statutes Cases,109 Ohio St.3d 313, *Page 2 2006-Ohio-2109. The trial court resentenced appellant and it is from this judgment appellant now appeals. For the reasons below, we affirm.
 {¶ 2} The sentence under consideration stems from an offense that occurred at a party on the night of August 16, 2002, and the early morning hours of August 17, 2002. Appellant, who was 18 years old at the time, and the victim, a 15 year old girl, met one another at the party. The adults throwing the party were in their twenties and thirties and supplied alcohol to the attendees who were underage. The victim attended the party with her younger brother ("brother") who was approximately 14 at the time.
 {¶ 3} As the evening progressed, the victim became intoxicated. The victim admitted to drinking rum, root beer schnapps, and beer. Eventually, one of the attendees announced that the police had arrived. Alarmed, the victim fled to the back yard to hide in a shed. She later remembered appellant slamming her against a parked van near the shed and then falling to the ground. She only remembered pain and discomfort in her vagina and ultimately being transported to the hospital. She denied consenting to sexual intercourse with appellant. However, statements from appellant and other witnesses revealed the details of the offense.
 {¶ 4} In his statement to police, appellant disclosed he had sexual intercourse with the victim. Appellant admitted he knew the victim was intoxicated and asserted she was a "stupid drunk." He claimed the victim consented to sexual intercourse. In particular, appellant asserted the victim provided him with oral sex then the two had intercourse for about 15 minutes. Appellant stated he then placed his whole hand inside of the victim up to his fist and began moving his hand around. According to *Page 3 
appellant, the victim said this caused her pain and she asked him to stop. He declined and continued; however, after she complained a second time, appellant stopped and began to have intercourse with her again. Appellant noted the victim eventually passed out but, by his own admission, he continued having intercourse with her for approximately 15 minutes after she passed out. The victim was left laying in the yard near a van, naked from the waist down, bleeding from the pelvic area. Her shirt was pulled up around her neck and her pants were off and tangled around the ankle of her right leg. The subsequent investigation revealed a two-foot by six-foot area of blood soaked grass where the offense took place.
 {¶ 5} After the offense, appellant returned to the house with his hands and pants covered with blood. Appellant related to others that there was an "easy" girl outside and anyone could have her. Appellant then raised his blood stained left hand in the air. The brother went outside, saw the girl was his sister and exclaimed "that kid raped my sister." Enraged, the brother reentered the house, punched appellant and then struck him in the head with a barbell he found on the floor.
 {¶ 6} The victim was ultimately transported to a hospital. During an emergency room examination, the victim occasionally regained consciousness and stated, "stop, you're hurting me, I don't even know you." The victim had scrapes and bruises on her forearms and the inside of both thighs, was bleeding from lacerations to her uterine wall, and it appeared as though her nose may have been broken. At approximately 2:30 a.m. the victim's blood alcohol content measured 0.370. *Page 4 
 {¶ 7} Although she was hazy about what had happened, the victim was eventually able to give a statement. She reported that she had been drinking and when the police had approached the party, she went to hide in a shed in the back yard. The shed was next to a van and she reported that appellant pushed her against the side of the van and then onto the ground. She remembered telling him to stop and that he was hurting her. Despite her protestations, appellant continued. She did not remember anything after that and denied having consensual sex with appellant.
 {¶ 8} By way of information, on October 23, 2002, appellant was charged with one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2). Appellant waived prosecution by indictment and entered a written plea of guilty to the charge of rape. On January 13, 2003, the trial court sentenced appellant to a term of ten years imprisonment and ordered appellant to pay restitution to the victim.
 {¶ 9} Appellant filed a notice of appeal and in State v. Curd, 11th Dist. No. 2003-L-030, 2004-Ohio-7222, this court affirmed the trial court. Appellant then filed a discretionary appeal to the Supreme Court of Ohio. On May 3, 2006, the Supreme Court reversed and remanded appellant's case for re-sentencing in light of State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In re Ohio Criminal Sentencing StatutesCases, 109 Ohio St.3d 313, 2006-Ohio-2109. On June 26, 2006, the trial court resentenced appellant and again imposed a ten year term of imprisonment.
 {¶ 10} Appellant now appeals and assigns four errors for our consideration. Appellant's first assignment of error alleges: *Page 5 
 {¶ 11} "Defendant was denied due process of law when the court overruled defendant's motion to satisfy sentence and discharge defendant."
 {¶ 12} Appellant argues his right to due process was violated when the court did not grant his "motion to satisfy sentence" after serving the minimum term of three years in prison. We disagree.
 {¶ 13} Appellant acknowledges that judicial factfinding was deemed unconstitutional in Foster, supra; however, appellant makes the strange assertion that he was nevertheless entitled to the minimum sentence for his rape conviction by operation of R.C. 2929.14(B) and, as such, he is entitled to be released from prison. We disagree.
 {¶ 14} In Foster, the Supreme Court of Ohio held that R.C. 2929.14(B),2929.14(C), 2929.14(E)(4), and R.C. 2929.19(B)(2) violate a defendant's Sixth Amendment right to a jury trial by replacing the judge as the fact-finder in lieu of the jury. Foster, supra. By way of remedy, the court simply excised the offending provisions from Ohio's felony sentencing scheme.
 {¶ 15} Former R.C. 2929.14(B) provided:
 {¶ 16} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender the court shall impose the shortest term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 17} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term. *Page 6 
 {¶ 18} "(2) The court finds on the record that the shortest term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 19} Prior to Foster, a defendant who had not served a prior prison term was entitled to a presumption in favor of the shortest prison term. However, Foster declared this statutory subsection unconstitutional en masse. Post-Foster, a court is no longer required to engage in the factfinding exercise mandated by former R.C. 2929.14(B) and, by implication, a defendant who has served no prior prison term is no longer entitled to a presumption of the shortest prison term. Post-Foster, a court is vested with the discretion to sentence a felony defendant to any sentence allowable by law under R.C. 2929.14(A). With this in mind, appellant's argument simply reduces to an ex post facto challenge to a retroactive application of the principles announced inFoster. This court has previously rejected this challenge in State v.Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011.
 {¶ 20} In Elswick, this court determined Foster did not undermine federal or state constitutional guarantees of due process as they relate to the prohibition against ex post fact laws since: (1) it did not affect a defendant's right to a sentencing hearing; (2) it did not alter the statutory range of sentences available to a trial court for any particular felony crime; and, (3) because the judicial determination of S.B. 2's unconstitutionality was prefigured by the United States Supreme Court in Apprendi v. New Jersey (2000), 530 U.S. 466 and Blakely v.Washington (2004), 542 U.S. 296. Elswick, at ¶ 21-25. *Page 7 
 {¶ 21} Here, the trial court did not run afoul of Foster or the surviving felony sentencing scheme. Appellant pleaded guilty to rape, a felony of the first degree. Pursuant to R.C. 2929.14(A), such a plea subjected appellant to a possible term of imprisonment of 10 years. The trial court, in its discretion, determined such a prison term was proper and we see nothing arbitrary or unreasonable in this imposition.
 {¶ 22} Appellant's first assignment of error lacks merit.
 {¶ 23} Appellant's second assignment of error reads:
 {¶ 24} "Defendant was denied due process of law when the court based its sentence on facts not alleged in the indictment nor admitted by defendant."
 {¶ 25} Similar to his first assignment of error, appellant's second assignment of error misunderstands the substantive impact ofFoster. In Foster, those portions of Ohio's felony sentencing scheme mandating judicial factfinding in order to increase a defendant's sentence beyond the statutory maximum were found unconstitutional, declared void, and formally excised. Here, the trial court, in re-sentencing appellant post-Foster, did not engage in impermissible judicial factfinding. In fact, after Foster, such an exercise would be impossible because the statutes which formerly mandated this exercise were severed, thereby eliminating the possibility of compromising a defendant's Sixth Amendment rights. Id. at paragraphs two, four, and six of the syllabus.
 {¶ 26} At the re-sentencing hearing, the trial court heard from the state, defense counsel, and appellant. After engaging defense counsel in a spirited discussion *Page 8 
regarding the underlying facts of the case and procedural nuances which led to appellant's plea, the court stated:
 {¶ 27} "The court has considered the record, the oral statements made, the presentence report, drug and alcohol and psychological evaluations, my conference in chambers with counsel, the statements of the Defendant and the Defendant's counsel. The Court has also considered the overriding purposes of felony sentencing pursuant to Revised Code2929.11, which are to protect the public from future crime by this offender and others similarly minded, and to punish this offender. I have considered the need for incapacitation, deterrence, rehabilitation and restitution, along with the public burden on governmental resources. I have reasonably calculated this sentence to achieve the 2 overriding purposes of felony sentencing and to be commensurate with and not demeaning to the seriousness of this offender's conduct and its impact on the victim and on society, and to be consistent with sentences imposed for similar crimes committed by similar offenders. In using my discretion to determine the most effective way to comply with the purposes and principles of sentencing, I have considered all relevant factors, including the seriousness factors set forth in division (B) and (C) and the recidivism factors in divisions (D) and (E) of Revised Code2929.12. The police report dated August 17th, 2002, details the incident here. Mr. Curd said and maintained all the time that the sex was consensual, in fact doesn't know why the victim's brother attacked him right after the offense. The Defendant's face, hands, shirt and pants, were covered in blood. The Defendant admitted to have been drinking, but there was a slight odor of alcohol beverage about his person. Police officer said it did not appear that he *Page 9 
was intoxicated. The victim was slipping in and out of consciousness, could not give an account as to what was, what had happened. After the Defendant raped her, he came and told everybody that there was a girl outside who was easy, anyone could have her. Then he held up his hand and his hand was covered in blood up to the wrist. The victim was found outside, unconscious and nude from the waist down, and bleeding from her pelvic area. She had scrapes and bruises to the insides of both thighs, bleeding from lacerations on the uterine wall, and it appeared as though her nose was broken. And some bruising on her forearms. And the medical personnel stated that there was definitely some type of struggle. Her blood alcohol content was .370. The victim relived the attack during the examination, and was yelling stop, you're hurting me, I don't even know you. Police found a blood soaked area in the, in the grass. And they also saw that a struggle may have taken place at the rear of a van. The Defendant admitted to having sexual intercourse with her and inserting his left fist into her vagina. He called her a stupid drunk, but claimed that she consented to have sex. Continued to fist her and then had intercourse with her again. He admitted leaving her naked in the yard. The victim required surgery to repair the lacerations to her uterine wall and there were tears at the opening of her vagina. The Defendant, in his pre-sentence report, states that the whole thing has been blown out of proportion and that the people in the community have watched him grow up, know that he does not do things like this. This is an extreme set of circumstances. The victim suffered serious physical, psychological harm. The crime was exacerbated by her age. Based upon the psychological evidence, the Court last time and still concludes that the Defendant was motivated by *Page 10 
prejudiced [sic] against the female gender. Based upon the psychological report, the Court determined that the Defendant had very little remorse, did not take this seriously. In fact, he told Dr. Fabian that well, I'll get a free education out of this. I still don't think that the Defendant knows how seriously he injured this young girl. * * *"
 {¶ 28} Based upon the foregoing, the court re-sentenced appellant to the maximum 10 years imprisonment. The court was well within its discretion to consider all of the information discussed above in arriving at its sentence. In fact, the trial court's recitation is specifically validated by State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855. In Mathis, the Supreme Court discussed the nature and dimension of the material a trial court may consider when conducting a post-Foster resentencing hearing. The Court concluded that "[t]he [trial] court `shall consider the record,' and information presented at the hearing, any presentence investigation report, and any victim impact statement." Id. at ¶ 37. All of the information discussed by the court at the re-sentencing hearing fit squarely within the items enumerated inMathis. Therefore, the trial court, in re-sentencing appellant, scrupulously followed the pronouncements of the Ohio Supreme Court and, in doing so, respected appellant's constitutional right to due process.
 {¶ 29} Appellant's second assignment of error is without merit.
 {¶ 30} Appellant's third assignment of error asserts:
 {¶ 31} "Defendant was denied due process of law when the court based its sentence from its own independent investigation and personal knowledge." *Page 11 
 {¶ 32} Appellant's third assigned error argues the trial court's sentence should be reversed because it was premised upon facts and/or information gleaned from the trial judge's personal investigation of the case. We disagree.
 {¶ 33} First, appellant did not level an objection on record to preserve this issue. A reviewing court need not consider a claim of error not raised in any way in the court below. State v. Smith,80 Ohio St. 3d 89, 107, 1997-Ohio-355. By not objecting to the perceived error he now challenges, appellant waived the issue absent plain error.
 {¶ 34} With this in mind, the trial judge considered appellant's admissions, the police report, the pre-sentence investigation report, psychological assessments, as well as conferences with counsel. All of the facts, statements, and information discussed on record by the trial court were part of the trial record transmitted to this court. We can discern no basis for appellant's allegation that the court engaged in a private or independent investigation of the crime to which appellant pleaded guilty. Thus, we hold there is no foundation to appellant's assertion that appellant's due process rights were violated in this respect. The trial court properly considered the evidence and record before it and therefore we detect no plain error.
 {¶ 35} Appellant's third assignment of error lacks merit.
 {¶ 36} Appellant's fourth assignment of error states:
 {¶ 37} "Defendant was denied due process of law when he was not sentenced to the presumptive minimum term of imprisonment."
 {¶ 38} Under his fourth assigned error, appellant, in part, reiterates the argument asserted under his first assignment of error. As this argument was overruled supra, it is *Page 12 
unnecessary to recycle our reasoning. This redundancy notwithstanding, appellant also asks this court to reduce his sentence in accord with the authority set forth under R.C. 2953.08(G).
 {¶ 39} R.C. 2953.08(G)(2) gives an appellate court the authority to "increase, reduce, or otherwise modify a sentence that is appealed * * *." However, it stands to reason that such a modification is warranted only where a reviewing court detects an error in the trial court's management of the sentencing hearing or in its imposition of sentence. As discussed above, Foster vests full discretion to impose prison terms within the statutory range. Id. at paragraph seven of the syllabus. To the extent a trial court does not transcend the statutorily permissible prison terms set forth in R.C. 2929.14(A) and/or the sentence is not otherwise contrary to law, the sentence must be upheld as reasonable and within the court's broad discretion. Here, the trial court followed the guidance of Foster and Mathis and, in doing so, sentenced appellant to a term of imprisonment consistent with the felony sentencing laws in Ohio.
 {¶ 40} Appellant's fourth assignment of error lacks merit.
 {¶ 41} For the reasons set forth above, appellant's four assignments of error lack merit. Therefore, the judgment of the Lake County Court of Common Pleas is hereby affirmed.
MARY JANE TRAPP, J., ROBERT A. NADER, J., Ret., Eleventh Appellate District, sitting by assignment, concur. *Page 1