{¶ 1} Defendant-appellant, Randy Deal, appeals from a judgment of the Cuyahoga County Court of Common Pleas finding him guilty of drug trafficking, possession of drugs, and possessing criminal tools, and sentencing him to seventeen months in prison. After reviewing the facts and the pertinent law, we affirm in part, reverse in part, and vacate Deal's convictions for drug trafficking and possession of criminal tools.
 {¶ 2} On June 8, 2005, the Cuyahoga County Grand Jury indicted Deal on one count of drug trafficking, in violation of R.C. 2925.03, one count of possession of drugs, in violation of R.C. 2925.11, and one count of possessing criminal tools, in *Page 2 
violation of 2923.24. He entered a plea of not guilty to the charges. A jury trial commenced on July 26, 2006. The following testimony was offered at trial.
 {¶ 3} The state first presented Bryan Curry ("Sergeant Curry") of the Cleveland Police Department. On April 10, 2005, at approximately 4:00 p.m., he and his partner, Jeffrey Yasenchack ("Officer Yasenchack"), were patrolling the area of East 35th and Cedar Avenue, when he saw a vehicle "change [it's] course" without using a turn signal. Sergeant Curry explained "if you make a turn, or if you are going from one lane to another, you have to use your signal[.]" He also noticed that the vehicle had a cracked windshield, did not have a front license plate, and that the occupants were not wearing their seat belts.
 {¶ 4} Sergeant Curry and Officer Yasenchack stopped the vehicle and asked the driver, Michael Ranaldson, and the passenger, Deal, for identification. Sergeant Curry said that Deal did not have identification, but he told Sergeant Curry his information and Sergeant Curry entered it into LEADS. Sergeant Curry discovered there was an outstanding warrant for Deal's arrest. He arrested Deal, handcuffed his wrists behind his back, searched him, and found $1,370 and a cell phone in his pocket. Sergeant Curry also searched the car's passenger area and found a bag of marijuana under the front passenger seat. He stated that Deal admitted the marijuana belonged to him. He then placed Deal in the back of the zone car.
 {¶ 5} Sergeant Curry testified that LEADS also showed that Ranaldson was driving under a suspended license. He stated that Officer Yasenchack issued a *Page 3 
citation to Ranaldson, told him to park his car, and "he was sent on his way." They never placed Ranaldson in the back of the zone car, or they would have written it in their report, which they did not.
 {¶ 6} Sergeant Curry stated that they were at the scene for an hour. Deal sat in the back of the zone car for a half hour before being transported. He testified that Deal made a cellular phone call when he was in the back of the zone car. While at the scene, a female approached Sergeant Curry and wanted to get Deal's money, but Sergeant Curry told her no.
 {¶ 7} Sergeant Curry and Officer Yasenchack drove Deal to the jail and took him out of the zone car. Sergeant Curry said that they asked Deal if he had any contraband or anything illegal on him and he replied no. Sergeant Curry testified that Officer Yasenchack searched the back of the zone car and found one bag containing seven rocks of crack cocaine. Sergeant Curry said that Deal was the only person who had been in the back of the zone car all day.
 {¶ 8} Sergeant Curry further explained that they always check the back seat of the zone car after they make an arrest, to make sure nothing has been left behind. Cleveland Police procedure requires officers to check the zone car for any contraband before and after every shift.
 {¶ 9} On cross-examination, Sergeant Curry testified that the area where they made the traffic stop is a high crime area. Sergeant Curry denied ordering Ranaldson out of his car, including when he searched the vehicle. He explained that *Page 4 
two other officers were also at the scene. He did not believe that he compromised the safety of himself or the other officers. He also clarified that Deal did not make the cellular phone call from the back of the zone car, rather, he made the phone call while he was still in Ranaldson's car. Sergeant Curry testified that the crack cocaine was found underneath the back seat cushion of the zone car.
 {¶ 10} Officer Yasenchack corroborated Sergeant Curry's testimony. When Officer Yasenchack searched under the driver's seat, he said that Ranaldson may have briefly stepped out of the car. The state asked him, "at any point, did you or your partner place the driver in the back of your zone car?" and he replied, "no."
 {¶ 11} On cross-examination, Officer Yasenchack stated that it would not be unusual for him to place someone in the back of a zone car, whom he had not arrested, and then let that person out. He testified that if they would have arrested Ranaldson, they would have seated him in the back of the second zone car, to separate him from Deal.[1]
 {¶ 12} The state rested its case. Deal moved for Crim.R. 29 acquittal. The court denied the motion.
 {¶ 13} Deal presented Ranaldson as his first witness. Ranaldson had been friends with Deal for twenty years. Ranaldson stated that when the police stopped his vehicle, the officers pulled him out of the car and searched him twice. The *Page 5 
officers also pulled Deal out of the car, searched him, and put Deal in the back of the zone car. Ranaldson stated that the officers then put him in the back of the same zone car with Deal, for approximately twenty to thirty minutes. Ranaldson saw Deal's girlfriend, Ndumbet Traore ("Ndumbet"), at the scene.
 {¶ 14} On cross-examination Ranaldson said that he used his turn signal, but admitted he had a cracked windshield. Ranaldson denied knowing anything about the crack cocaine and said that it did not belong to him.
 {¶ 15} Ndumbet testified that Deal called her from his cellular phone when he was in the back of the zone car. She and her sister, Kangku Traore ("Kangku"), drove to the scene. She stated that she saw Deal and Ranaldson sitting together in the back of the same zone car.
 {¶ 16} Ndumbet stated that the back window of the zone car was rolled down, so she asked Deal for the keys to her house and her money. She explained that Deal had approximately $1,400 of her income tax money because he was looking at a car that she was interested in purchasing. She said that the money was not related to drug deals and she did not know who owned the crack cocaine.
 {¶ 17} Kangku testified that she and Ndumbet arrived at the scene and saw Deal and Ranaldson in the back of the same zone car. She also said that there were only two officers at the scene with one zone car. She did not know who owned the crack cocaine. *Page 6 
 {¶ 18} Deal rested his case and renewed his motion for Crim.R. 29. The court denied it. The jury returned a guilty verdict on count one, drug trafficking, in violation of R.C. 2925.03, and found that the amount was equal to or exceeding one gram but less than five grams; count two, possession of drugs, in violation of R.C. 2925.11, and found that the amount was equal to or exceeding one gram but less than five grams; and count three, possessing criminal tools, in violation of R.C. 2923.24, and found that Deal intended to use the money or cellular phone to commit the felony offense of drug trafficking.
 {¶ 19} On July 27, 2006, the trial court sentenced Deal to seventeen months on each count of drug trafficking and drug possession, and six months for possessing criminal tools, to run concurrent to one another, for a total of seventeen months. In addition, the trial court sentenced Deal to a mandatory five years of post-release control.
 {¶ 20} It is from this judgment that Deal appeals, raising the following five assignments of error:
 {¶ 21} "[1.] Randy Deal's convictions were against the manifest weight of the evidence.
 {¶ 22} "[2.] Randy Deal's convictions have deprived him of his liberty without due process of law, because they were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt. *Page 7 
 {¶ 23} "[3.] Randy Deal was denied his constitutional rights of due process and not to be subjected to Ex Post Facto laws by the imposition of sentences in excess of the minimum terms.
 {¶ 24} "[4.] Randy Deal was denied his constitutional right not to be placed in jeopardy two times for the same offense, by his convictions on two counts of failure to comply [sic], which the court found to be allied offenses of similar import.
 {¶ 25} "[5.] Randy Deal was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to object to his multiple sentences for allied offenses of similar import."
 {¶ 26} We note at the outset that in his second assignment of error, Deal argues that the evidence was not sufficient to convict him beyond a reasonable doubt. In its brief and at oral argument, the state conceded that the evidence was not sufficient to convict Deal of count one, drug trafficking, and count three, possessing criminal tools. Accordingly, we sustain Deal's second assignment of error with respect to his convictions for drug trafficking and possessing criminal tools. Thus, for the remainder of this appeal, we focus our analysis on his conviction of possession of drugs.
 {¶ 27} In his first assignment of error, Deal argues that his conviction was against the manifest weight of the evidence.
 {¶ 28} With respect to manifest weight of the evidence, the Ohio Supreme Court has stated: *Page 8 
 {¶ 29} "* * * Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 30} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony. [Tibbs v. Florida
(1982), 457 U.S. 31, 42]. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 31} Although we sit as the "thirteenth juror," when assessing witness credibility, "the choice between credible witnesses and their conflicting testimony *Page 9 
rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v.Awan (1986), 22 Ohio St.3d 120, 123. The factfinder is free to believe all, part, or none of the testimony of each witness appearing before it.Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3.
 {¶ 32} Deal was convicted of one count of possession of drugs. Under R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 33} R.C. 2925.01(K) defines possession as, "* * * having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 34} Possession can be actual or constructive. State v. Brown, 8th Dist. No. 87932, 2007-Ohio-527, at _7. Actual possession entails ownership or physical control, whereas constructive possession is defined as knowingly exercising dominion and control over an object, even though that object may not be within one's immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, 91.
 {¶ 35} The state may show constructive possession of drugs by circumstantial evidence alone. State v. Trembly (2000),137 Ohio App.3d 134, 141. Circumstantial evidence is defined as, "`[t]estimony not based on actual personal knowledge or *Page 10 
observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought proved. * * *'"State v. Nicely (1988), 39 Ohio St.3d 147, 150, quoting Black's Law Dictionary (5Ed. 1979) 221. Circumstantial evidence possesses the same probative value as direct evidence, being indistinguishable as the jury's fact-finding function is concerned. State v. Jenks, (1991),61 Ohio St.3d 259, 272. The jury must weigh all the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Id.
 {¶ 36} Based upon the evidence presented at trial, we conclude that Deal's conviction was not against the manifest weight of the evidence. Sergeant Curry and Officer Yasenchack both testified that they pulled Ranaldson's car over because he did not have a front license plate, he had a cracked windshield, he changed course without using a signal, and the occupants were not wearing their seat belts. Deal voluntarily gave the officers his identifying information, whereupon they discovered that Deal had an outstanding warrant for his arrest. Sergeant Curry arrested Deal, handcuffed his wrists behind his back, searched him, and placed him in the back of the zone car.
 {¶ 37} Sergeant Curry and Officer Yasenchack also testified that Deal was the only person placed in the back of the zone car at the scene. They both said that Ranaldson was never in the back of the zone car. In fact, Sergeant Curry said that Deal was the only person in the back of the zone car all day. *Page 11 
 {¶ 38} After they transported Deal to the jail, Officer Yasenchack searched the back of the zone car. He discovered a bag under the back seat cushion, which had seven rocks of crack cocaine in it. Counsel stipulated that the crack cocaine weighed 1.50 grams. Sergeant Curry stated that Cleveland Police procedures require them to check the back seat of the zone car after they make an arrest, before and after every shift, to make sure nothing has been left behind.
 {¶ 39} Conversely, Ranaldson testified that he was placed in the back of the same zone car with Deal for approximately twenty to thirty minutes. But he also testified that the drugs did not belong to him. In addition, Ndumbet and Kangku stated that they saw Ranaldson and Deal together, in the back of the same zone car.
 {¶ 40} The jury, as the factfinder, however, was free to believe all or part of the testimony presented at trial. After reviewing the evidence, we conclude that the jury did not lose its way and create a manifest miscarriage of justice. The amount of reliable and consistent evidence presented by the state outweighed any inconsistencies in testimony and substantially supported Deal's conviction. Thus, Deal's first assignment of error is overruled.
 {¶ 41} In his second assignment of error, Deal asserts that the circumstantial evidence was not sufficient to convict him of possession of drugs.
 {¶ 42} Since sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. State v.Jackson, 8th Dist. No. 80810, 2002-Ohio-7226, at *Page 12 
_32. Thus, if the weight of the evidence supports the conviction, that will necessarily dispose of the issue of sufficiency. Id.
 {¶ 43} Therefore, because we already determined that Deal's conviction was supported by the weight of the evidence in his first assignment of error, we also conclude that the evidence was sufficient for a jury to find that all the elements of the instant offense was proven beyond a reasonable doubt. As such, Deal's second assignment of error is overruled.
 {¶ 44} In his third assignment of error, Deal contends that the trial court abused its discretion when it sentenced him to a more than the minimum prison term. In State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, at paragraph seven of the syllabus, the Supreme Court of Ohio held "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." Thus, the trial court had full discretion to impose a more than the minimum sentence in the case at bar.
 {¶ 45} Additionally, Deal contends that we are precluded from applyingFoster because it violates the Ex Post Facto Clause, Section 10, ArticleI of the United States Constitution, and the Retroactivity Clause, Section 28, Article II of the Ohio Constitution, which in turn, violates his due process rights.
 {¶ 46} In State v. Mallette, 8th Dist. No. 87984, 2007-Ohio-715, at _47, this court concluded that the remedial holding of Foster does not violate a defendant's *Page 13 
due process rights or the ex post facto principles. See, also, State v.Dawson, 8th Dist. No. 88486, 2007-Ohio-2761, at _11.[2]
 {¶ 47} Thus, based upon Foster and Mallette, Deal's third assignment of error is overruled.
 {¶ 48} In his fourth assignment of error, Deal maintains that he was prejudiced when he was convicted of drug possession and drug trafficking because they are allied offenses of similar import. However, since we sustained Deal's second assignment of error with respect to Deal's trafficking conviction, this argument is moot.
 {¶ 49} In his fifth assignment of error, Deal asserts that he was deprived of effective assistance of counsel because his trial counsel failed to object at the sentencing hearing, to the violation of the Ex Post Facto Clause, and his multiple sentences for drug possession and drug trafficking, since they are allied offenses.
 {¶ 50} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair *Page 14 
trial. State v. Bradley (1989), 42 Ohio St.3d 136, 141-142, citing,Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, at 143.
 {¶ 51} In Deal's third assignment of error, we determined that the remedial holding of Foster does not violate his due process rights or the Ex Post Facto Clause. Therefore, Deal's trial counsel's failure to object at the sentencing hearing, to the alleged Ex Post Facto Clause violation, did not amount to ineffective assistance of counsel.
 {¶ 52} Despite the fact that Deal's conviction for trafficking no longer stands, we will briefly address Deal's argument that his trial counsel should have objected because possession and trafficking are allied offenses. This court has held that possession of, and trafficking in, the same type and quantity of a controlled substance are not allied offenses, because each offense requires proof of an additional element that the other does not. State v. Fleming, 8th Dist. No. 88442, *Page 15 2007-Ohio-3645, at _30. Thus, Deal's trial counsel was not ineffective for failing to object at the sentencing hearing, to the alleged allied offense violation.
 {¶ 53} Therefore, Deal's fifth assignment of error is overruled.
 {¶ 54} Finally, although not raised by Deal, we sua sponte consider his sentence regarding post-release control, as it affects his substantial rights. See Crim R. 52(B). According to the transcript of the sentencing hearing, the trial court said, "[Deal] will be placed on three years of post-release control[.]" The journal entry, however, states "post[-]release control is part of this prison sentence for five years for the above felony(s) under R.C. 2967.28." A court speaks through its docket and journal entries. State v. Brooke,113 Ohio St.3d 199, 2007-Ohio-1533, at _47.
 {¶ 55} R.C. 2967.28(C) provides in pertinent part, "[a]ny sentence to a prison term for a felony of the * * * fourth * * * degree * * * shall include the requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, * * * determines that a period of post-release control is necessary for that offender." Thus, Deal should have received three years of discretionary post-release control because he was convicted of a felony of the fourth degree.
 {¶ 56} Under R.C. 2953.08(G)(2), an appellate court "may increase, reduce, or otherwise modify a sentence * * * or may vacate that sentence and remand the matter *Page 16 
to the sentencing court for resentencing. * * * The appellate court may take any action authorized by this division if it clearly and convincingly finds * * * [t]hat the sentence is otherwise contrary to law." Deal's post-release control is contrary to law.
 {¶ 57} The Ohio Supreme Court held that when a trial court sentences a felony offender to prison, it is required to notify the offender at the sentencing hearing about post-release control, and incorporate the notice into the sentencing entry. State v. Jordan, 104 Ohio St.3d 21, paragraph one of the syllabus. If a trial court fails to notify an offender that he may be subject to post-release control at his sentencing hearing, the sentence must be vacated and the matter remanded to the trial court for a new sentencing hearing. State v. Bezak,114 Ohio St.3d 94, 2007-Ohio-3250, paragraph one of the syllabus. But, if the offender has served his prison term, then the offender cannot be resentenced and subjected to post-release control. Id. at _18. The Supreme Court concluded that Bezak had already served his prison term, and thus, could not be resentenced so that post-release control could be imposed. Id.
 {¶ 58} In the case sub judice, Deal was convicted of a felony of the fourth degree, and he has already served his seventeen month prison term.[3] However, for the following reasons, this case is distinguishable from Bezak. *Page 17 
 {¶ 59} In Watkins v. Collins, 111 Ohio St.3d 425, 2006-Ohio-5082, twelve petitioners filed a writ of habeas corpus to compel their release from prison. The petitioners were in prison for violating the terms of their post-release control. The petitioners claimed that they were mistakenly informed at their sentencing hearings that they may receive post-release control, when it was actually mandatory.
 {¶ 60} The Ohio Supreme Court denied the writ, determining that although the petitioners' sentencing entries erroneously referred to discretionary instead of mandatory post-release control, a reasonable person in the petitioner's position would have had sufficient notice that post-release control could be imposed. Id. at _51. Thus, the Supreme Court concluded that the essential purpose of R.C. 2967.28 was satisfied; i.e., that offenders subject to post-release control know at sentencing that their liberty could be restrained after serving their initial sentence. Id. at _52.
 {¶ 61} As we previously stated, Deal was convicted of possession of drugs, a felony of the fourth degree, and has served his seventeen-month prison term. If he had not been given any notice about post-release control, then he could not be subject to it at this point.Bezak, supra, at _18. However, as in Watkins, he was at least put onsome notice that post-release control was part of his sentence. Id. at _51.
 {¶ 62} At Deal's sentencing hearing, the trial court notified him that he would be placed on three years of mandatory post-release control, rather than three years *Page 18 
of discretionary post-release control. In the journal entry, the trial court mistakenly gave Deal five years of mandatory post-release control. Here, the trial court erroneously informed Deal that he would be subject to more post-release control than he actually would be. This was actually more notice than the petitioners in Watkins had received (petitioners were informed that they might receive post-release control, when it was mandatory).
 {¶ 63} Thus, we conclude that Deal had sufficient notice that post-release control could be imposed. Therefore, this court modifies Deal's mandatory five-years of post-release control to three years of discretionary post-release control. See State v. Simpson, 8th Dist. No. 88301, 2007-Ohio-4301 and State v. Leonard, 8th Dist. No. 88299,2007-Ohio-3745 (this court sua sponte modified the defendant's sentence when the trial court improperly ordered defendant to serve more post-release control than should have been ordered).
 {¶ 64} As such, Deal's first, third, fourth, and fifth assignments of error are overruled. Deal's second assignment of error is overruled with respect to his possession of drugs conviction, but it is sustained with respect to his drug trafficking and possessing criminal tools convictions.
 {¶ 65} It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The common pleas court is ordered to vacate Deal's convictions for count one, drug trafficking, and count three, possessing criminal tools. Deals' conviction for possession of drugs is *Page 19 
affirmed. The common pleas court is further instructed to modify Deal's sentence to reflect three years of discretionary post-release control. Any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that appellant and appellee split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The state and defense stipulated that the substance found in the back of the zone car was positive for 1.50 grams of crack cocaine.
[2] In addition, in Dawson, we pointed out that every appellate district in the state of Ohio has reached the same conclusion. Id. at fn.1, citing State v. Bruce, 1st Dist. No. C-060456, 2007-Ohio-175;State v. Durbin, 2d Dist. No. 2005-CA-134; State v. McGhee, 3d Dist. No. 17-06-05, 2006-Ohio-5162; State v. Courtney, 4th Dist. No. 06CA18,2007-Ohio-1165; State v. Paynter, 5th Dist. No. CT2006-0034,2006-Ohio-5542; State v. Friess, 6th Dist. No. L-05-1307,2007-Ohio-2030; State v. Haschenburger, 7th Dist. No. 05MA192,2007-Ohio-1562; State v. Newman, 9th Dist. No. 23038, 2006-Ohio-4082;State v. Gibson, 10th Dist. No. 06AP-509, 2006-Ohio-6899; State v.Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011; and State v.Andrews, 12th Dist. No. CA2006-06-142, 2007-Ohio-223.
[3] At oral hearing, Deal's appellate counsel notified this court that Deal completed his sentence.