OPINION
{¶ 1} At approximately 2:30 a.m. on May 14, 2007, the owner of Club 99 in Mansfield, Ohio, called the police because patrons of the establishment were refusing to leave. One of the patrons in the bar was appellant, Broderick Petty. Three officers responded to the scene. One of the officers observed appellant holding a baggy containing a white substance. During the investigation of the matter, a struggle ensued, and appellant was subsequently arrested.
 {¶ 2} On July 14, 2005, the Richland County Grand jury indicted appellant on two counts of possession of cocaine (crack and powder) in violation of R.C. 2925.11, and one count of tampering with evidence in violation of R.C. 2921.12.
 {¶ 3} On May 4, 2007, appellant filed a motion to suppress, claiming an illegal search and seizure. A hearing was held on May 31, 2007. At the conclusion of the hearing, the trial court denied the motion. Said decision was journalized by judgment entry filed June 13, 2007.
 {¶ 4} A jury trial commenced on May 31, 2007. The jury found appellant guilty as charged.
 {¶ 5} On June 15, 2007, appellant filed a motion for new trial, claiming insufficient evidence to support the verdicts. A hearing was held prior to the sentencing hearing. The trial court denied the motion. Said decision was journalized by judgment entry filed June 26, 2007.
 {¶ 6} By judgment entry filed June 18, 2007, the trial court sentenced appellant to an aggregate term of five years in prison. *Page 3 
 {¶ 7} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 8} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO SHOW THE RESPONDING OFFICER HAD REASONABLE ARTICULABLE SUSPICION TO STOP AND SEARCH THE APPELLANT AND EVEN IF REASONABLE SUSPICION WAS PRESENT THE RESPONDING OFFICER PERFORMED A SEARCH THAT WAS OVER BROAD AND OUTSIDE THE SCOPE OF A VALIDTERRY SEARCH."
 II {¶ 9} "THE APPELLANT WAS DEPRIVED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT REQUIRED EVERYONE TO RECITE THE PLEDGE OF ALLEGIANCE EVERYDAY BEFORE TRIAL PROCEEDINGS."
 III {¶ 10} "THE TRIAL COURT ERRED IN ADMITTING THE RESULTS OF THE FIELD TEST PERFORMED BY OFFICER MILLER."
 IV {¶ 11} "THE TRIAL COURT ERRED IN ADMITTING THE LABORATORY REPORT OF TONY TAMBASCO."
 V {¶ 12} "THE PROSECUTOR ENGAGED IN PROSECUTORIAL MISCONDUCT DURING HIS REBUTTAL PORTION OF HIS CLOSING ARGUMENT." *Page 4 
 VI {¶ 13} "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON TAMPERING WITH EVIDENCE, AS THE TRIAL COURT FAILED TO GIVE A COMPLETE DEFINITION AS TO THE REQUIRED MENTAL STATE OF KNOWINGLY."
 VII {¶ 14} "THE APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 VIII {¶ 15} "THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 IX {¶ 16} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT HIS MOTION FOR A NEW TRIAL BASED UPON THE SUFFICIENCY OF THE EVIDENCE."
 X {¶ 17} "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S OFFENSE WAS COMMITTED AS PART OF AN ORGANIZED CRIMINAL ACTIVITY BECAUSE APPELLANT WAS CONVICTED FOR POSSESSION OF DRUGS, NOT TRAFFICKING." *Page 5 
 XI {¶ 18} "THE TRIAL COURT ERRED IN FAILING TO NOTIFY THE APPELLANT OF POST-RELEASE CONTROL FOR EACH OF HIS OFFENSES AND THUS HIS SENTENCE IS VOID AND HE IS ENTITLED TO A NEW SENTENCE HEARING."
 I {¶ 19} Appellant claims the trial court erred in denying his motion to suppress. Specifically, appellant claims the officer, City of Mansfield Police Officer Richard Miller, lacked reasonable articulable facts to support the search, and the search was overboard. We disagree.
 {¶ 20} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *Page 6 State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held inOrnelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 21} At the conclusion of the suppression hearing, the trial court stated the following:
 {¶ 22} "THE COURT: * * * I do find that the police officer had a reasonable grounds (sic) for coming to Club 99. They were invited by the owner herself to remove patrons from the bar, in a place where they should have a right to be.
 {¶ 23} "I find secondly that the officers had an opportunity, Officer Miller specifically, to view and deem what appeared to be cocaine and cash in the hands of a person, what appeared to be a felony drug possession offense, he therefore had probable cause to arrest. Having had probable cause to arrest, he had reason to search incident to an arrest. Therefore I'm refusing to suppress the evidence in this case." May 31, 2007 T. at 58.
 {¶ 24} As noted supra, the decision on factual findings is left to the trier of fact as long as those facts are supported by the record. The trial court's conclusions that the officers were lawfully in Club 99 at the request of the owner, and Officer Miller observed what appeared to be drugs, are supported by the record. Id. at 32-35.
 {¶ 25} During the incident, Officer Miller was wearing his police uniform. Id. at 16. He described the facts that gave rise to his seizure of appellant as follows:
 {¶ 26} "A. While I was making my way over to the DJ booth, just as I get there, my attention is turned kind of inadvertently to the defendant who has his back to the *Page 7 
patrons located in that half of the bar. I can see that he's got his hands kind of held up in front of him, and it appears from his motions that he's, I don't know if you call it a furtive movement, but he's manipulating something in his hands, I can tell.
 {¶ 27} "As I approach, I peer over his shoulder. About that same time I peer over his shoulder I can see he's got cash and a baggy of cocaine or a baggy of white powder that I believe at that time to be cocaine in his hand.
 {¶ 28} "He just about the same time turns and he sees me looking at him, his eyes get big. I mean, he's obviously startled. He turn to face me quickly, his hands behind his back, and I can see he's stuffing the baggy and the money down his shorts in the small of his back." Id. at 33.
 {¶ 29} After making these observations, Officer Miller grabbed a hold of appellant, told him he was under arrest, and a struggle ensued. Id. at 37-39.
 {¶ 30} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. Probable cause to arrest is not synonymous to probable cause for search. Arrest focuses on the prior actions of the accused. Probable cause exists *Page 8 
when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974), 38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections. 3.12-3.19.
 {¶ 31} In Coolidge v. New Hampshire (1971), 403 U.S. 443, a plurality of the United States Supreme Court discussed three requirements needed to invoke the plain view doctrine. The Supreme Court of Ohio adopted these requirements in State v. Williams (1978), 55 Ohio St.2d 82, paragraph one of the syllabus:
 {¶ 32} "In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities."
 {¶ 33} Despite appellant's furtive movements and Officer Miller's observations, appellant argues there was no probable cause to arrest him. Officer Miller observed appellant in possession of what appeared to be cocaine, and attempting to hide same. Under the plain view doctrine, we find probable cause existed to effectuate the arrest.
 {¶ 34} Officer Miller observed the possession of a drug which is a felony. Even if the drug had been proven to be legal, there was sufficient cause to believe a crime had been committed. *Page 9 
 {¶ 35} The test for probable cause is necessarily based in part upon some subjective observation. Officer Miller was a trained officer in drug enforcement, and was a former member of the Metrich Drug Task Force (a multi-county drug task force). May 31, 2007 T. at 31. Once probable cause to arrest is found, any subsequent seizure and search falls under the exception to a warrantless search, as a search incident to arrest. Appellant's claim of an overboard search is moot.
 {¶ 36} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 37} Assignment of Error I is denied.
 II {¶ 38} Appellant claims the trial court erred to his prejudice by having the courtroom audience recite the "Pledge of Allegiance" before his trial. We disagree.
 {¶ 39} Appellant cites to no explicit authority barring the trial court's action, and does not articulate what prejudice he sustained. We find United States v. Wonschik (2004), 335 F.3d 1192, 1198-1199, to be controlling:
 {¶ 40} "We recognize that trial judges, among their many other responsibilities, should take care not to create the impression that it is appropriate for the judge or the jury to favor the prosecution simply because the court and the prosecution are both institutions of the United States. However, we do not think it reasonable to suppose that the jurors inferred from the Pledge of Allegiance a patriotic obligation to serve as a rubber stamp for the prosecution. Rather, we believe the pledge represents, and evoked in the jurors' minds, a more enlightened patriotism, fidelity to which required *Page 10 
them to uphold our nation's Constitution and laws by sitting as impartial finders of fact in the matter before them. That is as likely to benefit a defendant as to prejudice him."
 {¶ 41} Assignment of Error II is denied.
 III {¶ 42} Appellant claims the trial court erred in permitting Officer Miller to testify as to the results of field tests on the cocaine. We disagree.
 {¶ 43} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 44} At the conclusion of the suppression hearing, appellant requested a motion in limine as to the field tests on the cocaine conducted by Officer Miller. May 31, 2007 T. at 59-60. The trial court granted the motion stating, "unless the issue is raised by the defendant challenging why he [Officer Miller] did what he did, I would prefer you not bring that evidence in based on his motion in limine." Id. at 60. InHenderson v. Henderson, 150 Ohio App.3d 339, 342, 2002-Ohio-6496, our brethren from the Tenth District explained a motion in limine as follows:
 {¶ 45} "A decision denying or granting a motion in limine does not finally determine the admissibility of the evidence to which it is directed. * * * Rather, it is a `"tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." `* * * The trial court is at liberty to change its ruling *Page 11 
once the hearing or trial has begun. * * * Therefore, finality does not attach when a motion in limine is decided and those decisions are not final orders. * * *" (Citations omitted.)
 {¶ 46} On cross-examination of Officer Miller, defense counsel asked the following:
 {¶ 47} "Q. All right. But, in fact, you personally did not test the substance, correct? When I say test, I mean at the lab.
 {¶ 48} "A. No, I did not test the substance at the lab." T. at 37.
 {¶ 49} Following a sidebar to determine if defense counsel had opened the door to the field tests, the trial court modified its prior ruling on the motion in limine finding, "[g]iven your tenure about sloppy investigation and that, I believe it's a factor that is relevant." T. at 46-47. On re-direct, the following question and answer transpired, and the following admonition was given:
 {¶ 50} "Q. Defense counsel asked you if you did a test on the cocaine, and you hesitated for a moment, and then you were asked if you did it at the lab and you said no. If you could tell the jury why you hesitated and what you meant by that?
 {¶ 51} "* * *
 {¶ 52} "A. What we do in cases of drug possessions and cocaine cases, our lab director, Tony Tambasco, provided field testing kits for us, and taught us how to field test cocaine.
 {¶ 53} "When we get cocaine, we bring it in, we put it on a glass slide, we test it with the field testing kit and check for a positive or a negative test. In this case we did, like we do any other time that we seize cocaine, I field tested what we had scraped or *Page 12 
gathered up from the floor that had come out of the exploding bag that had been stomped on, and it did test positive in the field test that I administered.
 {¶ 54} "THE COURT: Folks, that is not conclusive that that is cocaine. You have to rely on the lab tests from the chemist. But he's just explaining what he did in the course of his investigation. So it comes in for that limited purpose." T. at 49-50.
 {¶ 55} We find the testimony given on re-direct and the trial court's instructions were not unduly prejudicial to appellant. The cocaine in question was related to the tampering with evidence count of the indictment. It was probative not of cocaine possession, but of appellant's intent in stomping on the baggie which contained evidence to be used against appellant.
 {¶ 56} Upon review, we find the trial court did not err in permitting the complained of testimony.
 {¶ 57} Assignment of Error III is denied.
 IV {¶ 58} Appellant claims the trial court erred in admitting the laboratory report of Tony Tambasco (State's Exhibit 4). We disagree.
 {¶ 59} As we stated supra, our standard of review on evidentiary issues is abuse of discretion. Sage; Blakemore.
 {¶ 60} Appellant argues the report contained inadmissible hearsay and did not fall under any of the hearsay exceptions under Evid. R. 803.
 {¶ 61} Mr. Tambasco testified to his analysis and opinion as to the contents of State's Exhibits 1, 2, and 3 (cocaine, cash, and marijuana, respectively). T. at 98, 100-102. *Page 13 
State's Exhibit 4 was a copy of a lab report on state's Exhibits 1 and 2, along with Mr. Tambasco's affidavit. T. at 103.
 {¶ 62} Although it could be argued the report and affidavit were merely cumulative, we find State's Exhibit 4 was not inadmissible. R.C. 2925.51 (A) governs the authentication and admissibility of lab reports and states the following:
 {¶ 63} "(A) In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, * * * primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance. In any criminal prosecution for a violation of section 2925.041 of the Revised Code or a violation of this chapter or Chapter 3719. of the Revised Code that is based on the possession of chemicals sufficient to produce a compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V, a laboratory report from the bureau or from any laboratory that is operated or established as described in this division that is signed by the person performing the analysis, stating that the substances that are the basis of the alleged offense have been weighed and analyzed and stating the findings as to the content, weight, and identity of each of the *Page 14 
substances, is prima-facie evidence of the content, identity, and weight of the substances.
 {¶ 64} "Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory."
 {¶ 65} The state followed the procedures outlined in the above statute. Further, under Evid. R. 803(6), State's Exhibit 4 constitutes a business record:
 {¶ 66} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 67} "(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this *Page 15 
paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 68} We note the affidavit was examined and cross-examined as to the results of the tests.
 {¶ 69} Upon review, we find the trial court did not err in admitting State's Exhibit 4.
 {¶ 70} Assignment of Error IV is denied.
 V {¶ 71} Appellant claims prosecutorial misconduct occurred during the rebuttal portion of closing arguments. We disagree.
 {¶ 72} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
 {¶ 73} During closing argument, the prosecutor stated the following:
 {¶ 74} "MR. BAKER: * * * I would, however, suggest the caveat that this particular case is particularly strong. I thought last night about missing pieces and I just can't seem to find any. There are no legitimate disputed issues in the case. We are here because a man doesn't want to fess up to what he did." T. at 157.
 {¶ 75} Defense counsel objected and the trial court responded as follows: *Page 16 
 {¶ 76} "THE COURT: Well, obviously we're here because he didn't plead guilty, we're trying the case. Go ahead." Id.
 {¶ 77} We find none of the prosecutor's statements to be prejudicial. The statements were mere argument, and not suggestive of any undue prejudice.
 {¶ 78} Appellant also complains of the prosecutor's statements against compromise:
 {¶ 79} "MR. BAKER: * * * If jurors were permitted to reach compromised verdicts in order to feel better about themselves — which I would ask you not to do, we ask specifically you not do so in this case. Follow the law. If the defendant is guilty of it, please find him so guilty. He stomped on the evidence, he fought with the officers, and he deserves what he has coming to him for doing so." T. at 160-161.
 {¶ 80} Defense counsel objected to the last comment and the trial court responded as follows:
 {¶ 81} "THE COURT: Again, you're not trying to determine what he deserves. You are trying to find out whether the prosecutor proved what he alleged." T. at 161.
 {¶ 82} The trial court had instructed the jury not to consider punishment in its deliberation. T. at 132. We find both of these instructions were curative of any error.
 {¶ 83} Appellant also complains of the prosecutor's comments involving the lack of fingerprint evidence:
 {¶ 84} "MR. BAKER: * * * In twenty-six years of prosecuting cases, I've had one forgery case solved by fingerprints. The person's fingerprints were on the back of the check. Out of the thousands of cases, one case on fingerprints. They aren't what they are cracked up to be. When you watch the news, how many cases do you see that are *Page 17 
solved with fingerprint evidence? It just doesn't happen. The problem is there are fingerprints of any number of people that may be on an item requested. I haven't been the victim of a crime very often, but in the last couple weeks someone keyed my car. Why don't you dust my car for prints and find out whose prints are on there? The elements may have taken those prints away. We may have prints from mechanics, kids walking by. It doesn't narrow it down. Prints can slide — ." T. at 162.
 {¶ 85} We find these comments to be in response to defense counsel's closing argument on the lack of fingerprint evidence (T. at 151-152), and not prejudicial.
 {¶ 86} Lastly, appellant complains of the prosecutor's statements in defense of Officer Miller's credibility. T. at 163-164. In his closing argument, defense counsel had attacked the officer's credibility. T. at 144-146, 149. We find the prosecutor's comments to be a fair response to defense counsel's implications.
 {¶ 87} Upon review, we find no prosecutorial misconduct.
 {¶ 88} Assignment of Error V is denied.
 VI {¶ 89} Appellant claims the trial court erred in not re-defining "knowingly" in the jury instructions on the tampering with evidence charge. We disagree.
 {¶ 90} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), 90 Ohio App.3d 338;Blakemore. Jury instructions must be reviewed as a whole. State v.Coleman (1988), 37 Ohio St.3d 286.
 {¶ 91} Crim. R. 30(A) governs instructions and states as follows in pertinent part: *Page 18 
 {¶ 92} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 93} Because appellant did not object, we must review this argument under the plain error standard. State v. Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 94} The Ohio Jury Instruction on "knowingly" was given on Counts 1 and 2. T. at 126-127, 128. The trial court incorporated these instructions in giving its charge on the tampering with evidence count:
 {¶ 95} "THE COURT: I have already talked to you about what knowingly means. In this case one of the elements is that he knows an official investigation is in progress or about to be instituted. A person knows an official investigation is in progress or likely to be instituted or initiated when he is aware that an official investigation is probably in progress or likely to be initiated." T. at 129.
 {¶ 96} Upon review, we find the trial court did not err in instructing the jury on "knowingly."
 {¶ 97} Assignment of Error VI is denied. *Page 19 
 VII, VIII {¶ 98} Appellant claims his conviction for tampering with evidence was against the sufficiency of the evidence, and his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 99} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 100} Appellant was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1) which states the following:
 {¶ 101} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: *Page 20 
 {¶ 102} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."
 {¶ 103} We find the evidence presented established the elements of the crime. Appellant argues he did not know police action was going on. Officer Miller was in uniform, accompanied by other officers who were assisting the bar owner in closing the bar. T. at 49.
 {¶ 104} Officer Miller testified after he observed appellant with some cash and a baggy of what appeared to be cocaine, appellant turned toward the officer and the following occurred:
 {¶ 105} "A. * * * About the time this is all taking place, he turns around, sees me walking up on him, just a short distance away. When he does that he immediately — I mean, he was obviously startled, eyes big, you know, there I stand. He quickly tucks his hands behind his back and he stuffs the bag and the money down his shorts." T. at 19-20.
 {¶ 106} Officer Miller attempted to grab and arrest appellant, but he jerked away. T. at 21-22. A struggle with appellant ensued and the baggy fell out of appellant's shorts. T. at 22. The baggy dropped to the floor, and Officer Miller pointed it out to another officer. Id. Thereafter, appellant stomped on the baggy, causing it to explode, and the powder "flew up in the air." T. at 22-23. Appellant attempted to stomp on the baggy two more times. T. at 23.
 {¶ 107} We find sufficient credible evidence to establish beyond a reasonable doubt the crime of tampering with evidence. *Page 21 
 {¶ 108} Appellant was also convicted of drug possession of cocaine (crack and powder) in violation of R.C. 2925.11(A) which states, "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 109} As noted supra, appellant was in possession of the baggy containing white powder that had been stomped on. Following appellant's arrest, Officer Miller discovered a baggy of crack cocaine inside of appellant's shorts. T. at 23. The substances in the baggies were analyzed and found to be cocaine. T. at 98-99; State's Exhibit 4.
 {¶ 110} We find sufficient credible evidence to establish beyond a reasonable doubt the crime of possessing cocaine (crack and powder).
 {¶ 111} Upon review, we find no manifest miscarriage of justice.
 {¶ 112} Assignments of Error VII and VIII are denied.
 IX {¶ 113} Appellant claims the trial court erred in denying his motion for a new trial. We disagree.
 {¶ 114} Crim. R. 33 governs new trials. Appellant argues subsections (A)(1), (4), and (5) apply sub judice:
 {¶ 115} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 116} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; *Page 22 
 {¶ 117} "(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;
 {¶ 118} "(5) Error of law occurring at the trial."
 {¶ 119} Appellant's motion essentially attacked the sufficiency of the evidence. We have reviewed this issue in Assignment of Error VII and found it to be without merit.
 {¶ 120} Upon review, we find the trial court did not err in denying appellant's motion for new trial.
 {¶ 121} Assignment of Error IX is denied.
 X {¶ 122} Appellant claims the trial court erred in finding his actions were part of an organized criminal activity and he was engaged in drug trafficking in relation to his sentence. We disagree.
 {¶ 123} We note the trial court did not find appellant's actions were part of a RICO type crime spree. Rather, the trial court stated the following:
 {¶ 124} "THE COURT: Coming then to weigh the various factors I'm required to weigh, there is a prior history of criminal convictions, we just heard it described here, including trips to prison before. There has been a constant failure to respond favorably in the past to the sanctions that were imposed. We still have the new crimes that have just been demonstrated. He's shown o remorse for the offense, in fact, denied it happened at the time he went to the trial though the evidence was reasonably clear. *Page 23 
 {¶ 125} "In terms of seriousness factors, arguably the factor that it was committed for hire as part of organized criminal activity would apply to the drug trafficking trade, which the defendant was engaged at the time." T. at 185.
 {¶ 126} Under State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, and its progeny, appellant was sentenced within the range determined by the Ohio General Assembly. See, R.C. 2929.14(A)(3), (4), and (5).
 {¶ 127} Upon review, we find the trial court did not err in sentencing appellant to an aggregate term of five years in prison.
 {¶ 128} Assignment of Error X is denied.
 XI {¶ 129} Appellant claims the trial court failed to properly inform him of post-release control. We agree.
 {¶ 130} Appellant acknowledges the trial court informed him during the sentencing hearing that he was subject to "three years Post Release Control." T. at 186. However, appellant argues because he was convicted of more than one offense, post-release control should have been included in each offense. In support, appellant cites the case of State v.Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250, wherein the Supreme Court of Ohio held the following at syllabus:
 {¶ 131} "When a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void. The offender is entitled to a new sentencing hearing for that particular offense." *Page 24 
 {¶ 132} The state argues Bezak merely requires a trial court to inform a defendant of the total term of post-release control. While the state points out that the trial court verbally informed appellant of post-release control, the language of the sentencing entry merely referenced post-release control as follows:
 {¶ 133} "This sentence includes 5 years post release control (PRC). Violation of PRC could result in additional prison time up to 50% of this sentence. If the violation is a new felony, the defendant could receive a new prison term in this case of the greater of one year or the time remaining on the post-release control."
 {¶ 134} We note the Bezak case involved post-release control on a single offense and therefore is not applicable sub judice.
 {¶ 135} Appellant was convicted of third, fourth, and fifth degree felonies. R.C. 2967.28 governs post-release control. Subsection (C) provides for up to three years of post-release control for felonies of the third, fourth, and fifth degree felonies "if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender." While the trial court verbally informed appellant that he was subject to three years of post-release control, the judgment entry erroneously stated five years. We find the facts of this case to be similar to State v. Deal, Cuyahoga App. No. 88669, 2007-Ohio-5943, wherein our brethren from the Eighth District stated the following at ¶ 62-63:
 {¶ 136} "At Deal's sentencing hearing, the trial court notified him that he would be placed on three years of mandatory post-release control, rather than three years of discretionary post-release control. In the journal entry, the trial court mistakenly gave Deal five years of mandatory post-release control. Here, the trial court erroneously *Page 25 
informed Deal that he would be subject to more post-release control than he actually would be. This was actually more notice than the petitioners in Watkins had received (petitioners were informed that theymight receive post-release control, when it was mandatory).
 {¶ 137} "Thus, we conclude that Deal had sufficient notice that post-release control could be imposed. Therefore, this court modifies Deal's mandatory five-years of post-release control to three years of discretionary post-release control. See State v. Simpson, 8th Dist. No. 88301, 2007-Ohio-4301 and State v. Leonard, 8th Dist. No. 88299,2007-Ohio-3745 (this court sua sponte modified the defendant's sentence when the trial court improperly ordered defendant to serve more post-release control than should have been ordered)." (Emphasis sic.)
 {¶ 138} Based upon the foregoing, this court modifies appellant's post-release control from five years post-release control to three years of discretionary post-release control.
 {¶ 139} Assignment of Error XI is granted. *Page 26 
 {¶ 140} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed, but for the sentencing. Appellant's post-release control is hereby modified from five years post-release control to three years of discretionary post-release control. The matter is remanded to said court to execute a sentencing entry reflecting this modification.
Farmer, J., Gwin, P.J., and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed, but for the sentencing. Appellant's post-release control is hereby modified from five years post-release control to three years of discretionary post-release control. The matter is remanded to said court to execute a sentencing entry reflecting this modification. *Page 1